## Dooner v. Delaware & Hudson Canal Co., Appellant.

*Negligence—Railroads—Brakeman—Risk of employment.*

A railroad company is bound to take reasonable and ordinary care to furnish such car handles, ladders or safeguards on its cars as are in common ordinary use upon railroads; but it is not answerable to a brakeman for injury from a risk merely incident to his employment.

*Duty to inspect cars received from other railroads—Const., Art. 17, § 1.*

A railroad company is bound to make such inspection of cars received from another railroad as the nature of transportation requires, and if it pass and haul cars faulty in construction. or dangerously out of repair, it is answerable to its own employees who are thereby injured.

Article 17, § 1, of the constitution does not require a railroad company to move defective cars from other railroads.

In an action by a brakeman to recover damages for personal injuries from the railroad company which employed him, it appeared that the rules of the company required that the inspector of cars from other railroads should see that roof grab-irons, ladder handles, sill steps, ladder sides and rounds on cars were all sound and securely fastened to the body of the car by either bolts or lay screws. It did not appear that any instruction was given to reject the car if the appliances were not on the car at all. There was also evidence that the inspector was young and incompetent. *Held,* that the question of the company's negligence was for the jury.

*Negligence—Brakeman—Contributory negligence.*

A brakeman is not guilty of contributory negligence in side-tracking a car by a flying switch, where the exigency of the service requires it, although under ordinary circumstances a much safer method for accomplishing the same purpose could have been adopted.

A brakeman in making a flying switch fell from a freight car and was injured. It appeared that the car was without a handle or grab-iron, and that this defect was the cause of the accident. There was evidence that the car had been in charge of another brakeman, and that plaintiff had no opportunity by previous observation to know its defective condition; and that when he had drawn the coupling pin, signaled the engineer, and turned to seize the grab-iron or ladder, he first discovered the car had neither, and fell to the track. *Held*, that the question of plaintiff's contributory negligence was for the jury.

*Evidence—Opinion of experts—Defective car.*

Whenever circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men without special knowledge or training, opinions of witnesses, expert or other, are not admissible.

The opinions of expert witnesses that an ordinary freight car without handles, grab-irons or ladders, is dangerous, are not admissible.

Where a railroad company has shown by proper proof the written and oral instructions given to its inspectors who examine cars received from other railroads, the opinion of a witness as to the duty of the inspectors under such instructions is immaterial and inadmissible.

*Negligence—Evidence—Damages—Charge of court.*

On a trial of an action to recover damages for personal injuries, it is improper for the court to say in its charge that " no sane man would lose a leg for any compensation, but you are not to be guided by such a consideration as that in arriving at the amount of damages." The tendency of such a statement is to unduly inflame damages.

In such a case where the plaintiff is thirty years of age it is reversible error for the court to say, in the absence of evidence, " You would probably be warranted in acting upon the rule that a man in good health would live to the ordinary age of 65 or 70 years."

Argued April 9, 1894. Appeal, No. 7, Jan. T., 1894, by defendant, from judgment of C. P. Luzerne Co., Feb. T., 1890, No. 302, on verdict for plaintiff. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries. Before LYNCH, J.

At the trial it appeared that, on Oct. 31, 1889, plaintiff was injured while side-tracking a freight car by a flying switch. He claimed that the accident was caused by the absence of a grab-iron or ladder from the car which he was side-tracking. The facts appear by the opinion of the Supreme Court.

O. Russell, a witness for plaintiff, was asked, under objection and exception: " Q. Whether a car constructed as that car is

there, with no handle in front of it, would be a safe or unsafe car for a brakeman to work on in making a flying switch? A. Well, in my opinion it is a very unsafe car." [1]

The same witness was asked : " Q. What is the usual appliance to be found on the front of a freight car for the protection of the men, in 1889 ? Objected to on the ground that defendant was not bound to adopt any special pattern of car ; that merely what may have been the case with the majority of cars, is not evidence. Plaintiff's counsel states that the purpose is to show not what was found on one particular style of car, but what was ordinarily, commonly found on the front of a freight car, for the protection of the men, prior to the time this accident happened. Objection overruled and exception. " A. Well, the cars, as a rule, have a ladder that runs from the top of the car or roof of a car, besides one or two handles on the end whereby to take hold in case it was necessary." [2]

Thomas McCann, Thomas May, and J. F. Mulherrin, witnesses for plaintiff, were permitted, under objection and exception, to express their opinion that the car was an unsafe car to make a flying switch on.  [3–5]

James McGinley, foreman of car inspectors, and a witness for defendant, was asked : " Q. If the grab-iron that is spoken of here was missing from the corner of the car, what was the duty of the man who inspected it, relative to making a report about it and holding the car ?" Objected to on the ground that the duties in that regard are covered by the general rules in evidence. Objection sustained, exception." [6]

The same witness was asked: " Q. The instructions for your assistant inspectors, including those who inspected this car, were by word of mouth from you? A. Yes, sir. Q. They were not furnished with printed rules? A. No." Defendant's counsel now proposes to renew the question: What was the duty under your verbal instruction of the assistant inspectors, including the inspectors of the car in question on that day, with reference to reporting a missing grab-iron from a car and with reference to holding the car until repaired? Plaintiff's counsel: We desire to know whether defendants propose to prove by witness on the stand that witness gave to his assistants instructions to reject cars that had no handles or grab-irons on and never had any on, and also whether it is proposed to show

that the assistants under the witness disregarded those instructions. Defendant's counsel: 'We propose to show that, under the general oral instructions given, it was the duty of the inspectors to report any defect in the car, including the absence of a grab-iron. We propose to show that they did not report any defect of that kind in regard to this particular car; and that if it existed and they did not report it they failed in their duty. Plaintiff objects to the question for the reason that the defendant is not allowed in this action to escape its liability to the plaintiff by showing oral instructions on the part of this witness sufficient to have rejected the car in question had they been obeyed, so that the assistant in disobeying the instruction would be the person responsible for the damages resulting, instead of the company, under the printed rules. The Court: The objection is sustained. The court understands from an inspection of the book that it furnished the instruction from the employer to the inspector in so far as this matter is concerned. Defendant excepts and bill sealed." [7]

Edward Hartsell, the car inspector, defendant's witness, was asked: " Q. If there had been no grab-iron there or a grab-iron was missing, what, under the instruction of the foreman, was your duty to do about it? Question objected to because the testimony of the foreman, Mr. McGinley, is that the witness was acting under oral instructions from McGinley, and in effect that those oral instructions were different from the written instructions in the book in evidence. Objection sustained and bill sealed for defendant." [8]

The court charged in part as follows:

" [The evidence of the plaintiff tends to show—and it is for you to consider—that he never had seen on this or any road, a car without the guards spoken of; and that he had never been shown or warned by any person that such cars were in use by, or under the control of the defendant company, and that he had not observed this car and did not know until after giving the signal to the engineer to go ahead and attempting to step to the brake, that this car was without a ladder, guard, or hand-catch. If you determine from this evidence, that the defendant had not frequently or commonly used a car of this kind during the time plaintiff was employed upon the road, that they had not warned him that this car was without these appliances, that

he did not know it, had not a fair opportunity of knowing it, and that he was entirely free himself from negligence at the time of the accident, you may find a verdict in his favor. [9] . . . .

" [Was the car in question without the necessary guard spoken of by some of the witnesses ? If you find it was, and that such guards were reasonably necessary for the safety of the employee, and were in common, ordinary use upon other roads, and that the accident happened without the fault of the plaintiff, you may find a verdict in his favor.] [10] . . . .

" [The defendant company on the first of September, 1889, did adopt, it seems, a system of rules intended to regulate the inspection of foreign cars to be received by them for transportation, contained, as I understand, in the book in evidence, upon the title page of which are the words : ' Code of rules governing the condition of, and repairs to freight cars for the interchange of traffic, adopted,' etc., adopted or to take effect on this company's road on the first of September, 1889. Page three contains the following : ' General Rule 1. The railway company shall give foreign cars, while on its line, the same care as to oiling and packing that it gives to its own cars. Rule 2. Cars must be delivered in good running order and returned in as good general condition as when received. Rule 3. Cars may be refused for any of the following defects : ' Here follows an enumeration of defects, including defects of wheels, axles, brakes, etc. On page ten it is stated that steps, ladders or running boards shall be considered in bad order unless the following conditions are complied with : ' Running-boards sound and securely fastened to roof of car, roof grab-irons, ladders, handles, sill steps, ladder sides and rounds, all sound and securely fastened to car body by either bolts or lay screws.' Page 11, Rule 4. ' A car with defects which do not render it unsafe to run or unsafe to trainmen must be accepted ; but in such cases the company to whom such a car is offered may require that a defect card shall be securely attached to the car, preferably on the sides of cross-tie timber.'

" You will observe that, according to these rules for inspection, there is no provision as to whether ladders, roof grab-irons, ladder handles, ladder sides, rounds, etc., shall be upon the car. The rules seem to assume that cars properly constructed and without defect shall have these. I do not find any provi-

sions in these rules that the defendant's inspector shall mark a car defective and unfit for use upon its road or unsafe for its employees, if it have no roof grab-iron, ladder handles, sill steps, ladder sides and rounds secured to the car. The inspectors did not report this car defective for not having handles and ladders. Was it the inspector's duty under the rules to do so? I have not found any provision in the rules for the reporting of a car defective because it has not upon the end, a ladder or safeguard; and it is for you to decide whether a system of rules adopted by the company for the inspection of its cars ought to provide that cars without ladders and safety-handles shall be inspected. If you shall decide from the evidence that this system of inspecting foreign cars in force at the time plaintiff was hurt, was defective in the particular to which I have called your attention, it is the negligence of the company.] [11] . . . .

· " [No sane man would lose a leg for any compensation, but you are not to be guided by such a consideration as that, in arriving at the amount of damages.] [12] . . . .

" As was stated by counsel, a man may live to be sixty-five or seventy years of age, or he may die to-morrow; but you would probably be warranted in acting upon the rule that a man in good health would live to the ordinary age of sixty-five or seventy years." [13]

Plaintiff's points were as follows:

" 1. It was the duty of the defendant to exercise reasonable care in furnishing freight cars with the ordinary appliances, rods, ladders or handles by which the plaintiff in the performance of his duty as a brakeman on defendant's car could perform that duty by the exercise of ordinary care on his part, without unnecessary danger to himself; and if the jury find from the evidence that the defendant failed to exercise reasonable care in furnishing the car, which in this case was loaded with apples, with proper appliances, the rods, ladders, or handles, and that by reason of such failure on the part of the defendant the plaintiff was injured by falling from the front end of the car in question while in the performance of his duty and the exercise of ordinary care on his part, he not knowing or having reasonable opportunity for discovering the absence of rods or handles on the front end of the car, the plaintiff is entitled

to recover damages in this action for injuries sustained by him. *Answer :* I affirm that point with the explanation that if the injury occurred to plaintiff while he was in the performance of his duty and in the exercise of ordinary care, he not knowing or having a reasonable opportunity for discovering the absence of rods on the front end of the car. The exercise of ordinary care is to be considered and understood by the jury in relation to the business in which plaintiff was engaged. For instance, what might be care while upon the streets of Wilkes-Barre might be great negligence upon the bumper or front end of a freight car. Ordinary care means care according to the position in which a person is placed, and what his duty is. Negligence, as defined by the Supreme Court, is the absence of care according to the circumstances." [14]

" 2. It was the duty of the defendant before receiving the car No. 1093 from the Pennsylvania Railroad Company's yard for transportation over defendant's line, to exact that such car was provided with such necessary hand-rods or grab-irons as would render it reasonably safe for its brakemen to operate, in the exercise of ordinary care; and if the system of inspection provided by the defendant company in such cases before receiving cars from the Pennsylvania yard, was defective in not exacting the existence of such necessary hand-rods or grab-irons, then the defendant was guilty of negligence in that behalf, and if they did receive the car in question without having thereon hand-rods or grab-irons as aforesaid, and the plaintiff, while in the performance of his duty in making a flying switch, did not know of the absence of the hand-rod or grab-iron and had not reasonable opportunity to discover that fact, and while in the exercise of ordinary care suffered the injury complained of by reason of there being no rod or grab-iron on the front of the car in question, or on the side near the front, then the plaintiff is entitled to recover in this action. *Answer :* If you determine under the instructions which the court has given you that the plaintiff was free from negligence himself in any matter which contributed to his injury, this point is affirmed. But you will steadily keep that in mind—that in order to entitle the plaintiff to recover he must be free from contributory negligence." [15]

Defendant's points were as follows:

" 1. The plaintiff assumes the usual risks of his business and the defendant was not bound to employ the latest devices or the safest kind, but only such as were ordinarily safe and in ordinary use ; and it being shown by the plaintiff's own witnesses that cars of this pattern were often in use upon the road, the plaintiff is affected with notice and cannot object that the car was equipped with iron steps instead of a ladder. *Answer :* ' The plaintiff assumes the usual risks of his business, and the defendant was not bound to employ the latest devices or the safest kind, but only such as were ordinarily safe and in ordinary use.' I have already endeavored to state that to be the law, and that part of the point is affirmed. The second part of the point, ' And it being shown by the plaintiff's own witnesses that cars of this pattern. were often in use upon the road, the plaintiff is affected with notice and cannot object that the car was equipped with iron steps instead of a ladder,' is refused. That is a question of fact upon which there is conflicting evidence for the jury to pass upon." [16]

" 3. It was the duty of the plaintiff before attempting to uncouple the car in question to ascertain whether it was safe to do so or not while the train was in motion. *Answer :* That point is refused. That is a question of fact for the jury to pass upon. Taking all of the circumstances as detailed by the witnesses, into consideration, you will decide that question." [17]

" 4. It being in evidence by the plaintiff's own witnesses that the car was entirely safe to make the switch by roping it, and it being further in evidence by his own testimony that the plaintiff himself made the flying switch, he did so at his own peril and the company is not responsible for the resulting accident. *Answer :* That point is not affirmed. That is a question of fact for the jury. You will remember the evidence as to the time within which it was necessary to make the flying switch, and the opportunity for siding cars at that place." [18]

" 5. Since plaintiff's own witnesses testified that he could have stood with entire safety on the middle of the platform and could from that place have called to the engineer to go ahead, he being only the length of the tender distant from him, his failure to signal was contributory negligence on his part. *Answer :* That point is refused. His failure to stand

at that point and signal to the engineer, under the evidence, does not present a question for the jury to pass upon. If, however, the jury believe from the evidence in the case or the preponderance of the credible evidence, that it was the plaintiff's duty to stand in the middle of the car and give the signal, and that it was negligence upon his part to go to the right of the car as he stated he did, you may find for the defendant." [19]

" 6. As plaintiff testified that after he signaled the engineer he turned to the left, reached for support at that point and fell upon taking the second step toward the left side of the car, the absence of a grab-iron on the right side made no difference and was not the proximate cause of the injury. *Answer:* That point is refused. It is a question for the jury to decide whether a grab-iron on the corner or side of the car would not have enabled the plaintiff to have steadied himself and thereby protected himself from the fall." [20]

" 7. If the car lacked the grab-rod or was otherwise defective, the undisputed evidence being that the cars were inspected regularly and the defects alleged being such as the inspector ought to have discovered, negligence of the inspector was the negligence of a co-employee, and there being no evidence that the defendant did not exercise ordinary care in the selection of inspectors or continuing them in its employ, the defendant is not liable and the plaintiff cannot recover. *Answer:* That point is refused. If the accident was caused by the negligence of the inspector of this company to do his duty in making a thorough inspection under the rules, then the plaintiff cannot recover, because it is the negligence of a co-employee. But if the inspector did his duty under the rules furnished him, and you find as a matter of fact that those rules were defective in not prescribing what was essential for the inspection of foreign cars in order to make them reasonably safe for the employees of the company, you may find for the plaintiff. Because in that case it is the negligence of the company and not of its employees, and they cannot saddle their own want of care in prescribing rules upon one of their servants." [21]

8. Request for binding instruction. Refused. [22]

Verdict and judgment for plaintiff for $8,080.

*Errors assigned* were (1–8) rulings on evidence; (9–22) instructions as above; quoting instructions, bills of exception and evidence.

*Andrew H. McClintock* and *George R. Bedford*, for appellant.—The calling of experts to prove that the car was unsafe for the use Dooner put it to was wholly immaterial and uncalled for: Graham v. Pa. Co., 139 Pa. 149; Ballard v. R. R., 126 Pa. 141.

The court below erred when it refused to permit defendant to show by its witnesses the oral instructions given to the car inspectors, and then in the charge left it to the jury to find whether the instructions were sufficient.

The court erred in its instructions as to damages: Baker v. Pa. Co., 142 Pa. 503; Kehler v. Schwenk, 144 Pa. 348.

In order that an employer may be held liable to an employee for negligence arising from some defect in the machinery or appliances used by the employer at the time of the accident, it is not enough to show that the defect existed at the moment of the accident; it must also appear that the master had an opportunity of previous knowledge or that the facts were such that he ought to have known of the defect: Mixter v. Imperial C. Co., 152 Pa. 395; Mensch v. R. R., 150 Pa. 598.

Where a statute requires railroad companies " to deliver with due diligence all cars wholly or partially loaded with freight consigned to points on connecting roads," it is not per se negligence for such company to take such car not provided with " suitable apparatus for coupling: " Sims v. R. R., 26 S. C. 490.

The duty of a railroad company in receiving cars from other roads is, at the highest, only the duty of such inspection as the exigencies of traffic permit: Patterson's Ry. Accident Law, § 290; Gottlieb v. R. R., 100 N. Y. 462; Kohn v. McNulta, 147 U. S. 238.

The language of our third point was justified both upon principle and authority: Beamisch v. Roberts, 143 Pa. 1.

Plaintiff was guilty of contributory negligence: R. R. v. Langdon, 92 Pa. 21; R. R. v. McClurg, 56 Pa. 294; R. R. v. Zebe, 33 Pa. 318; Dagett v. R. R. Co., 34 Iowa, 284; R. R v. Miles, 13 A. & E. R. R. Cas. 10.

*John McGahren,* *L. H. Bennett* with him, for appellee.—The running and management of railroad locomotives and trains is said to be so far an art, outside of the experience and knowledge of ordinary jurors, as to render the opinions of persons skilled therein admissible,—such opinions being in the nature of expert testimony : Rogers on Expert Testimony, § 107 ; Lewis v. Seifert, 116 Pa. 628 ; Kehler v. Schwenk, 151 Pa. 505 ; Bier v. Mfg. Co., 130 Pa. 446 ; Allen's Ap., 99 Pa. 196.

If it was not the duty of defendant's inspectors under its specific rules, to reject a car having no handles or grab-irons, then defendant itself was negligent and not the inspector, and this responsibility cannot be shifted by the inspector's conclusion of the meaning of his general oral order given to an assistant.

The instructions as to the measure of damages were correct : In Baker v. R. R., 142 Pa. 305, cited by defendant, the true measure of damages was nowhere set forth in the charge, and for that reason alone the complaint of the charge was a just one. In Kehler v. Schwenk, 144 Pa. 348, the sentence objected to was not the ground of reversal and was merely referred to by this Court as an undesirable form of expression.

While a railway as a common carrier is bound to receive and haul cars from other lines, its duty to its servants requires it to subject all such cars to as thorough an inspection as the exigencies of traffic permit, and if that inspection be not made, or if upon such an inspection any such car be found to be faulty in construction or dangerously out of repair, the railway ought to decline to haul it, and if it does undertake to haul it the railway ought to be liable for any injury to a servant caused thereby : Patterson's Railway Accident Law, p. 309 ; Richardson v. Ry., L. R. 10 C. P. 486 ; Fay v. Ry., 11 A. & E. R. R. Cas. 193 ; Gottlieb v. R. R., 100 N. Y. 462 ; Ry. v. Valirius, 56 Ind. 511 ; R. R. v. Avery, 109 Ill. 315 ; Stetler v. R. R., 49 Wis. 609.

Where the measure of duty is not unvarying, where a higher degree of care is demanded under some circumstances than under others, where both the duty and the extent of its performance are to be ascertained as facts, the jury alone can determine what is negligence, and whether it has been proved : R. R. v. McElwee, 67 Pa. 315 ; McKee v. Bidwell, 74 Pa. 223 ; Crissey v. R. R., 75 Pa. 83 ; R. R. v. Huber, 128 Pa. 63.

OPINION BY MR. JUSTICE DEAN, Oct. 1, 1894:

The plaintiff, John F. Dooner, was a railroad brakeman. This had been his occupation for about five years, and for the last year, prior to October 31, 1889, he was in service of the defendant company. On that day, while in the performance of his duty as brakeman, he was run over by a freight car which defendant was transporting, and lost his leg. The accident came about in this way. The railroad of defendant begins at Wilkes-Barre, where it connects with a number of railroads entering and passing through the city. It is the duty of defendant to accept and transport the cars of other roads over its lines on their way to destination. A regular freight train is made up on defendant's road, to run north from Wilkes-Barre about two o'clock in the afternoon of each day. On the day in question, this train numbered twenty-two cars, in charge of a crew made up of a conductor, engineer, fireman and four brakemen; the brakemen were placed on the train, first, Ross; second, Dooner, this plaintiff; third, May; and fourth, Alles. Among the cars making up the train was one, No. 1093, laden with apples, received from the Pennsylvania railroad. This car was coupled to the engine, and the next car to it was one of merchandise, both to be cut off and side-tracked at Scranton. The train, thus made up and manned, left Wilkes-Barre and reached Scranton on defendant's road, where it runs by a stone arched subway under the Lackawanna railroad. The car of merchandise was to be left at a siding south of this subway, and the car of apples on a siding north of it. Dooner attended to the switching. The merchandise car was first placed upon its proper siding; then the apple car was run to another siding by what is called a " flying switch "—that is, uncoupling the car from the engine while moving, and applying the brake to the car—the engine then making such distance between it and the car by its increased speed as to allow of connecting the side track with the main track at the switch after it has cleared the connection. Dooner, standing on the beam, four to five inches wide, uncoupled the apple car from the locomotive, then, from the right side, signaled the engineer to go ahead; then, turned to apply the brake on the left side, fell from the beam to the track, and had his leg crushed.

The plaintiff alleged his injury was caused by defendant's

negligence, in not furnishing this apple car with the ordinary appliances of safety, such as ladders or grabs; in consequence, in performance of his work, with ordinary care, he was seriously crippled. He alleges that, after drawing the coupling-pin, and while standing on the narrow beam of the car, he turned to seize hold of a handle, grab-iron or rod, which ought to have been there, but there being none, he fell to the track.

The defendant contended that plaintiff was guilty of contributory negligence: (1) In side-tracking the train by the "flying switch," instead of by pole or rope. (2) In not discovering the absence of grab-iron, handles or rods, before he attempted a dangerous method of side-tracking the car. (3) In not remaining on the center of the beam, and from there signaling to the engineer, instead of going to the side of the car for that purpose. The court submitted the evidence of negligence of defendant and contributory negligence of plaintiff to the jury. There was a verdict and judgment for plaintiff, from which defendant appeals.

The appellant prefers twenty-two assignments of error, which might have been materially reduced in number without, in any noticeable degree, weakening the force of the argument.

The 1st to 8th, inclusive, and 10th, 11th, 20th and 21st aver errors in admission of and rejection of evidence, and statements of the law on the question of defendant's negligence. The 9th and 14th to 19th, inclusive, allege error in the rulings of the court as to contributory negligence on part of plaintiff. The 12th and 13th allege error in the instruction as to measure of damages. The 22d complains of a denial of peremptory instruction to find for defendant.

As touching the negligence of defendant, a photograph of the end of a car was exhibited in evidence by plaintiff, as representing the end of this apple car, except that the apple car had no grab-iron like that in the photograph. The plaintiff and one other witness testified to this. If this were the fact, and that was for the jury, then this car had on the end near the side of it, a brake wheel and chain; in the center, two small iron steps for getting up to the roof, the first about three feet from the beam or platform, the second about the same distance above the first.

The rule as to the duty of the employer, in view of this tes-

timony, was correctly given to the jury by the court below; they were told that it was the duty of defendant to exercise reasonable care in furnishing its servants with safe machinery and implements for the transaction of its business; but that the law required nothing more; that it was not bound to furnish the best and safest appliances, the latest improvements, but was bound to take reasonable and ordinary care to furnish such car handles, ladders or safe-guards as are in common, ordinary use upon railroads; and that it was not answerable to plaintiff for injury from a risk merely incident to his employment. This is in substance the law deducible from all the authorities.

Nor does the fact that the car in question was received from another road, to be transported by defendant's employees over its own road, relieve defendant from the duty of ordinary care in this particular. While every road must obey the mandate of section 1, article XVII of the constitution, to " receive and transport . . . . cars loaded or empty, without delay or discrimination," of another connecting road, yet, by no reasonable construction, can that be held to mean cars of another road not in a condition for transportation, or not provided with the appliances which ordinary care requires for the reasonable safety of train crews in properly handling them. The obvious purpose of the section was to prohibit common carriers from discrimination in transportation between their own cars and those of other roads. All were to be moved over the lines of each other, with the same promptness and impartiality. But the constitution no more commands one road to move defective cars from other roads, than to move its own cars when defective. So that, if there were any evidence of negligence here, there was no error in the instruction by which the evidence was submitted to the jury. The case of Anderson v. Oliver, 138 Pa. 156, cited by appellant, is not in point. In that case it was not the duty of the employee to move the defective car, and his employer neither controlled nor managed the transportation on the railroad. In the case of Kohn v. McNulta, 147 U. S. 238, also cited, the alleged defective car of another road was of a design in daily use on the road where plaintiff was employed, and he had both seen and coupled cars like it; it was not out of repair, but merely of a design peculiar to the

same class of cars on the connecting road, and it did not appear that it was lacking in any of the usual appliances of this class of cars.

The measure of duty of the receiving road, as to cars turned over to it for transportation by connecting roads, is settled by many cases: "It is bound to make such inspection as the nature of the transportation requires, and if it pass and haul cars, faulty in construction or dangerously out of repair, it is answerable to its own employees who are thereby injured." The many cases, both in England and in this country, which sustain in substance this proposition are cited in Patterson's Railway Accident Law, page 309.

Here the printed rules of inspection, to govern the inspector in receiving foreign cars, seem to assume the existence on the cars of the appliance, which plaintiff alleges was absent. On page 10, it is made the duty of the inspector to see that "Roof grab-irons, ladder handles, sill steps, ladder sides and rounds, all sound and securely fastened to car body by either bolts or lay screws" exist.

It was alleged that a freight car without handles or grab-irons was absolutely unknown, and without one or the other it was impossible for the brakeman to perform the duty exacted by his employment. The inspector is to see that the appliances are securely fastened, but no instruction is given to reject, if they are not there at all. There was also evidence that the inspector was young and incompetent. We think it was a question for the jury to determine as to whether the company exercised the care required of it in this particular. In the case of Phila. & R. R. Co. v. Huber, 128 Pa. 63, the court says: "The testimony was very abundant that the company enforced a system of daily inspection of all cars at the place of this accident, and if this had been thorough, the defect in this brake should have been discovered." Whether the system of inspection in this case was thorough, depended on the instructions of the company, and the competency of the inspector. It was a disputed fact for the consideration of the jury, whether, by defendant's negligence, a defective car was taken upon its road from another road, for transportation.

Then, as to the contributory negligence of plaintiff. There is no doubt that side-tracking a car by a "flying switch" is a

highly dangerous operation, requiring quickness of perception and great alertness of movement on part of the brakeman; there is just as little doubt however, that its performance as a duty by employees, is required at times by the employer, especially in cases where the side-tracking must be quickly completed, so as not to encroac! on the track when approaching passenger trains are due. There was ample evidence that this was the exigency here. Clearly, there was no negligence in plaintiff performing a highly dangerous duty, required by the nature of his employment, although under ordinary circumstances a much safer method for accomplishing the same purpose could have been adopted. Was he negligent in attempting the act while upon this car? That would depend altogether on the circumstances. The rule laid down by this court in Mansfield Coal and Coke Co. v. McEnery, 91 Pa. 185, and distinctly and emphatically adhered to in Railroad Co. v. Lyons, 119 Pa. 324, and other cases, is that, where the employee has knowledge of machinery being defective and dangerous, and uses it, he voluntarily accepts the risk, and cannot recover damages for an injury caused by such use. This was substantially the instruction given by the learned judge of the court below, and it fully met the facts as they were alleged by plaintiff. He claimed he had not observed this apple car before he attempted to side-track it, because it was one in immediate charge of the first brakeman, from Wilkes-Barre to Scranton; then, when the "flying switch" was to be made, there was no opportunity for previous observation, and his duty compelled him to at once use it; then, when he had drawn the coupling pin, signaled the engineer and turned to seize the grab-iron or ladder, he first discovered it had neither, and he fell to the track.

The plaintiff, in the course of his employment, was bound to notice patent defects; and if this car had been in his charge and under his immediate observation from the time the train left Wilkes-Barre, it may be that it would have been contributory negligence on his part to take his place on the beam to side-track it by a "flying switch." But these were not the facts, and the rule in Railroad Co. v. Keenan, 103 Pa. 124, applies, that under these circumstances, the evidence on the question of contributory negligence is also for the jury. It was fairly submitted to them.

All the assignments of error in the general charge, and in answer to points touching the negligence of defendant and contributory negligence of plaintiff are overruled.

The first to fifth assignments are to the admission of evidence, under exceptions, of experts, to prove, in effect, that defendant was negligent; for opinions of witnesses, that this apple car was defective and unsafe, was substantially proving plaintiff's case by opinion. If this common freight car had been a complicated and intricate piece of machinery, the necessity of the case might have justified calling for the opinion of experts; but the freight car and its appliances were about as simple as the ordinary farm wagon. Plaintiff alleged it was defective, because there was nothing to lay hold of when he had drawn the coupling pin. Clearly, the opinion of a witness, as to whether this was or was not a defect, was not the opinion of an expert, but of a man of ordinary intelligence and observation. The jury still have some duties to perform; inferences drawn from the ordinary affairs of life ought not to be drawn for them, and turned over under oath from the witness stand. In admitting these opinions, the court committed the same error pointed out in Graham v. Penn. Co., 139 Pa. 149, where it is said: " As necessity is the ground of admissibility, the moment the necessity ceases, the exception to the general rule that requires of a witness facts and not opinions, ceases also. Hence, whenever the circumstances can be fully and adequately described to the jury, and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, opinions of witnesses, expert or other, are not admissible."

These assignments of error are sustained; the opinions of the witnesses were as to a fact of which the jury could form an opinion as well as they.

The 6th, 7th and 8th assignments are to the refusal of the court to admit evidence of the oral instructions given by the chief inspector, McGinley, to his assistants. The defendant offered to prove by McGinley what oral instructions he gave to his assistants, who inspected that day this apple car. There was no objection, and the witness answered : " I gave those men instructions, that is, under me, for to give those cars taken from foreign roads thorough inspection, so as to be safe to go over the road, and safe

to trainmen." Afterwards defendant proposed to prove what the duty of his assistants was from oral instructions given by him, as to rejecting a car without grab-irons.   The defendant had a right to prove precisely what the oral instructions, in addition to the printed rules, were ; the opinion of the witness as to the duty of the assistants, under such oral instructions, is immaterial.   The negligence or absence of negligence on part of defendant, must be determined by the instructions, and what was done in pursuance of them.   It cannot be determined by the opinion of the chief inspector.   There was no error in rejecting the offer as made ; nor was there any error in overruling the same offer of proof as to Edward Hartsell.   The actual instructions, written and oral, were proven.   These assignments of error are overruled.

As to the 12th assignment, on the measure of damages, the language was not well chosen to express the thought of the learned judge.   "No sane man would lose a leg for any compensation, but you are not to be guided by such a consideration as that in arriving at the amount of damages."   The objection to such remarks, is, that their tendency is to unduly inflame damages.   Analyze the probable effect: The corporation has been negligent, thereby plaintiff lost his limb; no possible amount of money would compensate him for this loss ; it is beyond power of recompense.   The first suggestion to the mind of the juror, is, that this purely speculative estimate should be reached as nearly as possible.   His mind is drawn away from the measure fixed by law, the loss of earning power, and directed to a wholly fanciful basis for estimate.   Here was a man thirty years of age, with the earning power of a brakeman ; the verdict is over $8,000, yielding, at 5 per cent, annual net earnings of $400, with the principal intact at death.   The amputation was between knee and ankle, not resulting in total disability, for he testifies he is now engaged in a business which yields him an income.   No sentiment should enter into such a computation, because the law has fixed the measure, and the court and jury, under their oaths, must adhere to the law.   As this case must go back for another trial, without a formal ruling on this assignment, we are called upon to repeat, in substance, our views as set forth in Baker v. Penna. Co., 142 Pa. 503, and Kehler v. Schwenk, 144 Pa. 348.

The 13th assignment of error must be sustained. The court says, " You would probably be warranted in acting upon the rule that a man in good health would live to the ordinary age of 65 or 70 years." There was no evidence here, as to the probable longevity of plaintiff; the average expectation of life of 1000 men in good health at 30 years of age, falls short of 35 to 40 years more. Without referring to carefully compiled life tables, any man 65 years of age, from his own observation, will hesitate to say that at 30 the probability of survivorship is 35 or 40 years longer. In looking back 35 years to his acquaintances of that period, whose age then, was about the same as his own, he will realize that he has survived the large majority of them, and that no such probability is to be deduced from his own observation. It may be, there is such probability as to this plaintiff's life, but if so, we have failed to discover any evidence in this record tending to establish it. Without evidence of such a probability, the adoption of it, as suggested to the jury by the court, was an error.

This and the 13th assignments of error are sustained. The 22d is overruled, for, as we have already seen, the case is for the jury.

The judgment is reversed, and a v. f. d. n. awarded.