## Dominices *v.* Monongahela Connecting Railroad Company, Appellant.

Argued September 29, 1937; reargued October 7, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William A. Challener,* with him *William A. Challener, Jr.,* and *Frank McC. Painter,* for appellant.

*George I. Bloom,* of *Bloom & Bloom,* with him *Alexander Cooper* and *Arnold J. Lange,* for appellee.

OPINION BY MR. JUSTICE STERN, November 22, 1937:

Plaintiff, an employee of Jones & Laughlin Steel Corporation, was injured while unloading a tank car at the Hazelwood polishing mill of that company on August 20, 1930.

The car was the property of General Chemical Company, but since 1926 had been under lease to Jones & Laughlin Steel Corporation. It was used for the trans-

portation of sulphuric acid. On the top were two caps, one closing the vent of the acid line, the other of the air line. The acid line is the pipe through which the acid is unloaded; the air line allows accumulated fumes to escape so as to prevent the development of excessive pressure within the tank, and it also serves as the duct through which, in unloading, air is driven into the tank in order to force the acid out. As a customary safety measure, the cap on the air line either contains an opening at least two inches in diameter, or is fitted with a disk so constituted as, automatically to rupture at a given pressure. About a month before the occurrence of the accident, the air cap on this car fell off and broke, and an employee of Jones & Laughlin Corporation took a sleeve, screwed into it a solid iron plug in which he drilled a small hole, and put it on as a replacement of the broken cap. This was a defective and inadequate substitution, especially as the perforation became clogged with sulphate.

On July 29, 1930, the car was loaded with sulphuric acid by employees of Jones & Laughlin Corporation at its by-products plant, and defendant Monongahela Connecting Railroad Company, a common carrier, was directed to haul it to the corporation's polishing mill, a distance of about half a mile. It will be noted that the by-products plant and the polishing mill were merely different departments of Jones & Laughlin Corporation. Defendant transported the car on that day to its own yards adjacent to the polishing mill, awaiting a switching order as to the placing of the car for the purpose of unloading. Such an order was not given by Jones & Laughlin Corporation until the evening of August 19. Early the following morning defendant placed the car on one of its sidings immediately adjoining the tank of Jones & Laughlin Corporation into which the acid was to be discharged. Defendant had no control over the unloading of the acid, and did not participate therein in any manner.

Immediately after the car was spotted a foreman of Jones & Laughlin Corporation ordered plaintiff, together with another employee, to empty it. Plaintiff climbed upon the car and started to unscrew one of the caps; it blew off and the acid spurted out in large quantity. Plaintiff was dreadfully burned. He obtained workmen's compensation from his employer, Jones & Laughlin Corporation, but brought the present suit to recover damages from defendant. Sufficient evidence was produced at the trial to relate the accident to the defective air cap, but there was considerable controversy as to whether plaintiff himself was negligent. The jury rendered a verdict for plaintiff. Defendant's motions for a new trial and for judgment n. o. v. were overruled. The present appeal rests primarily upon defendant's contention that it owed no duty to plaintiff and therefore the verdict cannot be sustained.

Up to a certain point the pathway leading to the solution of the problem involved is well defined. In Pennsylvania, as in other jurisdictions, it is settled that a railroad company, before hauling freight cars over its lines, must subject them to an inspection sufficiently thorough to ascertain whether there is any fairly obvious defect in their construction or state of repair which constitutes a likely source of danger. The real question is: to whom is this duty owed? Certainly to persons properly in or around the car during the course of transportation. Certainly also to employees of the railroad company, because of its duty at common law, as of other employers, to furnish its employees with a reasonably safe place to work: *Dooner v. Delaware & Hudson Canal Co.*, 164 Pa. 17, 31; *Elkins v. Pennsylvania R. R. Co.*, 171 Pa. 121; *McConnell v. Pennsylvania R. R. Co.*, 223 Pa. 442.[1] Also, generally speaking, to the

---

[1] It is not clear in this case whether the court treated the status of plaintiff as that of an employee of defendant railroad company, or as an assistant of the consignee, which in fact he was: see pp. 445, 446, 452.

consignee and his employees; if any of these is injured in unloading, due to some defect in the car which might have been discovered by a reasonable inspection, recovery may be had of the railroad company: *Rick v. New York, Chicago & St. Louis R. R. Co.*, 232 Pa. 553; *McGinley v. Central R. R. of New Jersey*, 235 Pa. 576. The carrier's liability is not dependent upon ownership, it being immaterial whether the car belonged to the railroad company itself, as in the *McGinley* and *McConnell* cases, or was received from a connecting company for transportation, as in the *Dooner* and *Rick* cases, or—at least in the case of an injury to one of its own employees—belonged to a private owner, as in the *Elkins* case. The reason is, that when a company hauls a car over its lines, it thereby, in theory, adopts it as part of its own equipment, irrespective of the source from which it may have been received.

The vital fact in the present case, differentiating it from all these previous ones, is the identity of consignor and consignee. All that defendant here did, or was asked to do, was to haul the tank car from one plant or part of the Jones & Laughlin establishment to another. Jones & Laughlin Corporation not only knew of the defective condition of the car but had actually created it, and defendant delivered it to Jones & Laughlin Corporation as consignee in the same condition in which it had received it from Jones & Laughlin Corporation as consignor. Under such circumstances defendant should not be held liable for failure to have discovered the defect and to have warned the consignee's employees of danger.

What is the theory upon which liability ordinarily is imposed upon a railroad company if it delivers a defective car to be unloaded? Apparently, the carrier is regarded as representing to the consignee: "We are supplying this car (either owned by us or temporarily procured from a connecting carrier or from a private owner) and, as such supplier, we have made a reasonable inspection to enable us to assure you that the car is

safe for you and your employees to enter for the purpose of removing your merchandise." This implied assurance is the more necessary because the consignee himself is not obliged to make an inspection of the car before his employees unload it: *Anderson v. Oliver*, 138 Pa. 156; *McMullen v. Carnegie Bros. & Co.*, 158 Pa. 518; *Rehm v. Pennsylvania R. R. Co.*, 164 Pa. 91, 94; *McGinley v. Lehigh Coal & Navigation Co.*, 224 Pa. 408; *McGinley v. Central R. R. of New Jersey*, 235 Pa. 576, 579. Thus, under usual circumstances, the consignee and his employees are entitled to rely upon the performance by the carrier of the duty of inspection.

In the present case the situation is entirely different. In a realistic sense defendant did not "supply" the defective car; on the contrary the car was supplied by the consignee itself. The duties which ordinarily attach, therefore, to the supplier of a chattel are not applicable. It would be a strained legalism to import an implied representation by defendant to the consignee that the car was in good condition, when the consignee had itself put the car in bad condition. Nor, as far as the consignee's employees are concerned, should defendant be held to have undertaken a duty in regard to them by reason of its having hauled the car from one plant or department of their establishment to another, any more than if the hauling had been merely from one part to another part of the same plant or from one group of the consignee's employees to another. Of course, the railroad company's duty would still remain as to its own employees.

Even were it conceded in this case that a duty of inspection rested upon defendant and that it failed in an obligation owed to plaintiff, the latter would still have no right of recovery. If a carrier delivers to a consignee an uninspected car which is a potential source of danger to one unloading it, such act ordinarily would be the proximate cause of an injury resulting from a defect in the car. As already stated, no duty of inspection rests

upon the consignee, and even if there were such a duty and it were unperformed, the negligence of the carrier and of the consignee might be regarded as concurrent and as fastening liability upon both.[2] But where, as in the present case, the consignee, by its employee, itself created the defect and nevertheless, by its foreman, ordered plaintiff to go upon the car and unload it, any prior negligence on the part of defendant was thereby superseded, because the consignee was an intervening human agency which, with full knowledge of the situation, by its act transformed a potential danger into an accident, and thus interrupted the chain of causation. If Jones & Laughlin Corporation had deliberately caused plaintiff to be pushed into a car, known to it to be defective and out of repair, undoubtedly such an act would be regarded in law as the sole cause of any accident which followed, since the proximate cause *is not the one supplying the condition but the one producing the injury.* Between physically *thrusting* plaintiff into the car, and *ordering* him in, knowing that as an employee he was bound to obey, and would obey, the order, no ground for legal distinction can exist. If the test as to whether one act of misfeasance or negligence supersedes another is whether it was foreseeable by the first

---

[2] Where a carrier neglects its duty of inspection and turns a defective car over to a connecting railroad, which, ignorant of the defect, likewise fails to inspect the car before delivery to the consignee, there is a difference of opinion as to whether the failure of inspection by the second railroad is merely concurrent negligence which does not exculpate the first carrier (*Pennsylvania R. R. Co. v. Snyder,* 55 Ohio St. 342, 45 N. E. 559; *Moon v. Northern Pacific R. R. Co.,* 46 Minn. 106, 48 N. W. 679; *Teal v. American Mining Co.,* 84 Minn. 320, 87 N. W. 837), or whether it becomes the proximate cause of the injury and relieves the first railroad from liability (*Glynn v. Central R. R. of New Jersey,* 175 Mass. 510, 56 N. E. 698; *Missouri, Kansas & Texas Ry. Co. v. Merrill,* 65 Kans. 436, 70 Pac. 358; *Roberts v. Southern Pacific Co.,* 54 Cal. App. 315, 201 Pac. 958; *Lellis v. Michigan Central R. R. Co.,* 124 Mich. 37, 82 N. W. 828.

tort-feasor, it is clear that while a railroad company might be expected to foresee the failure of a consignee to inspect a car delivered for unloading, it could not reasonably be held to foresee that a consignee which itself owned the car and therefore presumably had full knowledge of its condition, would, in violation of the duty owed to an employee, order him to unload it if defective, and especially if the defect had actually been within the cognizance of the consignee.

The principles thus indicated are discussed more fully in *Kline v. Moyer*, 325 Pa. 357. Numerous examples might be given of their widespread application but a few at random will suffice as illustrations. In *Stultz v. Benson Lumber Co.*, 6 Cal. (2d) 688, 59 Pac. (2d) 100, it was held that where one sold a defective plank to be used for the building of a scaffold, he was not liable for injuries sustained by the buyer's employee who fell when the scaffold broke, if the defective condition of the plank was known to the buyer who constructed the scaffold, since his negligent act in using the plank broke the link of responsibility between the negligence of the seller and the ultimate injury. In *McCallion v. Missouri Pacific Ry. Co.*, 74 Kans. 785, 88 Pac. 50, a railway company which furnished a defective car to a consignee was held not liable for injuries to the latter's employee caused by the defect, where the consignee knew of it in time to have repaired it or to have warned his employee, but failed to do either. In *Griffin v. Jackson Light & Power Co.*, 128 Mich. 653, 87 N. W. 888, where an electric company placed a lamp in the business establishment of a customer who, knowing that it was defectively insulated and dangerous, nevertheless used it, and a third person, in the course of his duties, was injured thereby, it was held that the latter could not recover from the electric company because of the superseding intervention of the customer between the company's negligence and the accident.

The legal responsibility for the regrettable accident to plaintiff in the present case rests solely upon his employer, Jones & Laughlin Steel Corporation. The court below should have granted the motion of defendant for judgment n. o. v.

Judgment reversed and here entered for defendant.