George A. VONDERGOLTZ et al., Appellants,

v.

OIL & CHEMICAL PRODUCTS, Inc., et al., Appellees.

No. 12813.

Court of Civil Appeals of Texas.

Galveston.

June 9, 1955.

Rehearing Denied June 28, 1955.

E. W. Newman, Albert P. Jones and Helm & Jones, Houston, for appellant.

Andrews, Kurth, Campbell & Bradley, Raymond A. Cook and Richard Gray, Houston, for appellee Port Terminal Railroad Assn.

Fulbright, Crooker, Freeman, Bates & Jaworski, Leon Jaworski, M. S. McCorquodale and Quentin Bates, Houston, for appellees Oil & Chemical Products, Inc., and Processors, Ltd.

CODY, Justice.

This was a suit by George A. Vondergoltz, joined by the Liberty Mutual Insurance Company, as intervenor, which was the compensation carrier of the employer of the said Vondergoltz, when Vondergoltz fell from a tank car about 1:00 p. m., July 5, 1951, and received serious injuries. The suit was brought against Oil & Chemical Products, Inc., and against the Processors, Ltd., and against the Port Terminal Railroad Association, to recover damages resulting from the fall, it being alleged in substance that the defendants were negligent in the performance of duties owed to the said George Vondergoltz, proximately causing his injuries. At the time of the accident, Vondergoltz was discharging the duties of a loaderman for his employer, Consolidated Chemical Industries, Inc. (hereafter referred to as Consolidated).

The case was tried to a jury. Because of the identity of their interests the Oil & Chemical Products, Inc. and the Processors, Ltd. conducted a common defense. At the conclusion of plaintiffs' case, and again at the conclusion of all the evidence, said defendants urged their motions for a directed verdict. The Port Terminal Railroad Association likewise at the same times filed its motions for a directed verdict. The court refused such motions. But the jury was unable to agree upon a verdict, and the

court discharged it. Thereupon the defendants urged motions for judgment upon the same grounds, theretofore set up in their motions for directed verdicts, while the Plaintiffs urged the court to declare a mistrial. After taking the motions under advisement, the court rendered judgment that plaintiffs take nothing.—The defendants, Oil & Chemical Products, Inc., and the Processors, Ltd., because of their identity of interests, will hereafter be referred to as appellees, whereas appellee Port Terminal Railroad Association will be referred to as the Railroad. The compensation carrier, because it was simply seeking to enforce its subrogated rights, need not be referred to. So, we will use the term "appellant" to refer to George A. Vondergoltz; where it was necessary or to the interest of the compensation carrier to join in any action taken by appellant, it will be understood that the compensation carrier is also included in the designation of "appellant".

Appellant has predicated his appeal upon two points to the effect: (1) that the court erred in granting the motion of the railroad for judgment because appellant's evidence made out a case to go to the jury as against it, and (2) that the court erred in granting the motion of appellees for a directed verdict because appellant's evidence made out a case to go to the jury as against them.— We will discuss these points in reverse order; we overrule the second point.

. The evidence showed: that the tank car here involved, being designated GATX 34393, belonged to the General American Transportation Company, and was used in the transportation of acid; that it was under lease to Mathieson Chemical Company; that about October 23, 1950, the Mathieson Chemical Company lent the tank car to the Consolidated (the employer of appellant); that from then on until July 5, 1951, the date of the accident, the car was under the direction and control of the Consolidated; that on May 25, 1951, the car was dispatched empty by the Consolidated from the premises of its plant in Houston to the premises of appellees' plant in Houston. The purpose of Consolidated was to receive a tank load of sludge acid from appellees' plant,—the

acid was no longer of any use to appellees but could be refined or purified by the Consolidated. The tank car remained on the premises of appellees until July 2, 1951, awaiting the accumulation and loading of the sludge acid. The tank car then left the premises of appellees and was returned to the premises of Consolidated on July 4, 1951. The shipment was made via the T. & N. O. Ry. Co., and appellee Railroad, with Consolidated paying all freight charges both ways. The car was on the premises of the Consolidated at the time appellant fell therefrom and received his injuries, while working for the Consolidated. During the trial it was stipulated that the Consolidated selected and dispatched the tank car in question to appellees' plant for the purpose of receiving the load of sludge acid which was received by Consolidated about 6:00 p. m., July 4, 1951.

The tank car here involved had a platform around its dome, and a metal ladder attached to its side which led up to the platform. There was a guard rail around the platform with openings on each side to permit entry onto the platform. When appellant went to work for Consolidated on the morning of July 5, 1951, the car was on the rail siding by the loading rack which appellant was supposed to work. The unloading operation in such cases was carried on by lowering the running board from the loading rack to the platform around the dome of the tank car. A loading arm weighing between 125 and 150 pounds extended from the rack to the tank car. Appellant was Consolidated's First Loaderman, and in the operation of unloading from a tank car, the loaderman would proceed from the rack to the tank car's platform by means of a running board and then make the necessary connections and then, when the unloading was completed, the loaderman would return to the tank car, disengage the loading arm, and return it to its original position on the loading rack.

On this occasion more than three hours were consumed in the unloading operation. When the operation was completed, appellant went onto the platform around the dome of the tank car to disconnect the load-

ing arm, and return it to its original position on the rack. As was customary at the Consolidated's plant in such cases, appellant pushed the loading arm back from the platform so that he could go to the loading rack and secure the loading arm in its place. However, in pushing the loading arm back appellant braced himself against the guard rail. The guard rail, or hand rail, gave way, causing appellant to lose his balance and fall, receiving his injuries. The guard rail had become eroded by the action of acid. The defect in this hand rail which caused it to give way was a narrow strip of rust or corrosion an inch or inch and a half wide, near where it was attached to the platform around the dome of the tank car. Appellant had been on the platform at least twice on the morning of July 5, 1951. He did not notice the defect, though he noticed and reported another defect.

It was only after the railing had so broken that it was noticed it was badly rusted along a narrow strip of an inch or inch and a half wide where it was attached to the platform. The foreman of Consolidated found that he could with his own strength, without any mechanical aid, tear the attachment of the railing to the platform loose. No one during the time the tank car had been operated by the Consolidated had noticed this badly rusted attachment of the railing to the car. The defect, according to the foreman for the Consolidated, would have been seen only if someone had been looking for it. Said attachment which anchored the railing to the car was some ten feet above the ground; and anybody would have had to go up on the platform and inspect for this strip of erosion next to the car in order to have discovered it,—so Consolidated's foreman testified.

■ The appellees, after a tank car was loaded at their plant, would inspect it for leakage. If any other defect happened to be noticed, appellees would report the discovered defect to the person from whom same was received, or to the owner of the car. Here appellant would be entitled to recover from appellees only if he could establish by pleading and proof that appellees had violated some duty due him. The car did not belong to appellees. It had been under the control and direction of Consolidated for some six or eight months before the accident. It is certain that the process by which the attachment of the hand rail to the platform became rusted and eroded was a slow one. And the facts will not reasonably support an inference that during the month or weeks that the tank car was on the premises of appellees awaiting the cumulation of a load of sludge acid the rotted or corroded condition happened. It was established by the stipulation of the parties that the Consolidated (appellant's employer) selected and dispatched the tank car to appellees' premises for the purpose of receiving the load of acid which was transported back to Consolidated and delivered to it on July 4, 1951. In a word, the Consolidated consigned the car to appellees and were the consignees of the car when it returned with the sludge acid which appellees were glad to get rid of, and which Consolidated in its business purified so as to sell it.

It is true that a purpose of appellees was served in getting rid of the sludge acid. But the equipment used, i. e., the tank car, was supplied by the Consolidated. At the most, appellees could only have been bailors of the tank car while it remained in their possession. And, as to the Consolidated, the appellees only owed the duty to return the bailment in as good condition as when received. 6 Am.Jur. 313. We can find no principle upon which to base any duty on the part of appellees to inspect equipment supplied it by the Consolidated in order to notify the Consolidated's employee of defects in such equipment. The case of Dominices v. Monongahela Connecting Railroad Co., 328 Pa. 203, 195 A. 747, dealt with a tank car hauled from one plant of a corporation to another plant of the same corporation. The carrier did not discover, and of course did not warn of, a defect in the car which resulted in an injury to one of said corporation's employees who was engaged in unloading acid from such car. The court held that the theory on which liability was imposed on a carrier for defects in a car is this: That the carrier was regarded as rep-

resenting to the consignee "We are supplying this car (either owned by us or temporarily procured from a connecting carrier or from a private owner) and, as such supplier, we have made a reasonable inspection to enable us to assure you that the car is safe for you and your employees to enter for the purpose of removing your merchandise. * *." The court went on to state that in the case before it, the corporation had itself supplied the car,—just as the Consolidated itself here supplied the tank car to appellees.

■ We are of the opinion also that the defect in the hand rail was not of a nature that appellees should have been expected to look for, or discover. Furthermore, there was no evidence that appellees knew of the manner in which the Consolidated unloaded acid from tank cars, and no evidence that appellees should have foreseen that the hand rail would be used as a fulcrum by the Consolidated's employees so as to cause it to break, or use same for a purpose for which it presumably was not designed in the first place, though it is not suggested that such a use was not a reasonable one.

We hold that appellees were not shown to have violated any duty owed by them to appellant.

■ This brings us to appellant's first point; that is, whether appellant's evidence made out a case to go to the jury as against the Railroad.—We have concluded that we are constrained to hold that there was insufficient evidence to carry the case to the jury as against the Railroad.

The Supreme Court of Pennsylvania in effect held in the Dominices case, supra, that a railroad company, when it hauls a car owned by others who construct cars for the purpose of being used to haul certain products which the railroad is not obligated to furnish cars in which to haul same, adopts such car as its own, and is obligated to make the same inspection as it must make of its own cars. But this holding appears to have been dicta, for the court exonerated the railroad of liability in that case. We fail to see how any good purpose would be served to hold that a railroad company is not under the same duty to inspect a tank car, as it is to inspect a railroad car, at least insofar as a tank car is like a railroad car, though the authorities seem to be the other way. In any case, the Railroad appellee did subject the tank car here involved to the same character of inspection that it subjected all other cars supplied by itself. This inspection failed to disclose the defect here responsible for appellant's injuries. Appellant in effect claims that such inspection amounted to no inspection, and certainly fell far short of what a reasonably prudent inspector would have done under the same or similar circumstances.

We think no purpose would be served to give all of the details which inspectors are expected to examine. Here the Railroad was the only one that served the Consolidated. The type of examination or inspection used by the Railroad was this: Some eleven hundred to fourteen hundred cars a day pass through the Railroad's yards. There are some sixteen inspectors to perform the inspection of them. There is an inspector on each side of the track when cars are drawn by. These inspectors have about one minute to inspect each car for defects. Such inspection is made from the ground. If some defect is discovered which requires it, the inspector will get on the car for a more minute inspection.

■ From our reading of the record we consider that the evidence was undisputed that the defect in the tank car which was responsible for appellant's injuries could not have been discovered from the ground. Under the law of Texas a railroad company is not responsible for hidden defects, "which could not be discovered by such an inspection as the exigencies of traffic will permit." Colorado & S. Ry. Co. v. Rowe, Com.App., 238 S.W. 908, 912; and see Gulf, W. T. & P. Ry. Co. v. Wittnebert, 101 Tex. 368, 108 S.W. 150, 14 L.R.A.,N.S., 1227. Certainly the exigencies of traffic would not admit of the Railroad climbing the tank car and inspecting for defects such as resulted in the injuries here sustained by appellant.

The judgment is affirmed.