ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* THURMOND.

Opinion delivered May 10, 1902.

FELLOW SERVANT—GRADE OF EMPLOYMENT.—A locomotive engineer having supervision over men under him and a fire-knocker having no men under him are not fellow-servants, as they are not of the same grade of employment, though they are engaged in the same employment and under the direction of a common superior.

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

Affirmed.

*Dodge & Johnson,* for appellant.

It is the duty of an employee to make a reasonable use of his senses to avoid injury in the course of his employment. 5 McCrary, 471; 75 Ill. 108; 27 Minn. 141; 47 Miss. 420; 12 Met. 415; 41 Miss. 131; 2 Mees. & Wels. 244; 1 Ad. & Ell. 36; 4 Bing. 142. Compensation is not allowed for injuries resulting from one's own misconduct or negligence. 9 Hill, 522; 17 Fed. 882; 39 Fed. 620; 74 Ind. 445; 51 Miss. 641; 31 Mich. 430; 50 Wis. 66; 33 Ohio St. 227; 67 Mo. 239; 44 Ark. 293; 66 Me. 429; 74 Ill. 344; 78 Mass. 575; 90 Ala. 68; 55 Wis. 50; 90 Ala. 2; 106 Mo. 74; 40 Ia. 341. The master only uses reasonable care to prevent bad results. 35 Ark. 602; 44 Ark. 529; 46 Ark. 567. Appellant is not responsible for negligent acts of deceased's fellow servants. Sand. & H. Dig., § 6249; 63 Ark. 496; 65 Ark. 260.

*P. C. Dooley, E. W. Kimball* and *R. E. Wiley,* for appellee.

There is evidence to support the verdict. 56 Ark. 314; 57 Ark. 577; 34 Ark. 632. The pit was negligently and improperly con-

structed. 54 Ark. 289, 300; 179 U. S. 658. The appellant was
negligent in its employment of its hostler. 12 Am. & Eng. Enc.
Law (2d Ed.), 1024; 65 Fed. 958; 95 Mo. 662; 98 Mo. 330; 54
Ark. 289; 112 U. S. 377, 383. There was no contributory negli-
gence. 46 Ark. 182, 193; 48 Ark. 475; 46 Ark. 436. The hostler
was not a fellow servant. 12 Am. & Eng. Enc. Law (2d Ed.),
1019; 108 Ill. 576; 58 Ark. 342. Appellant's negligence was
responsible for the injury. 54 Ark. 299; 112 U. S. 383. The ques-
tions are all of fact for the jury, and this court will not disturb
the findings. 42 Fed. 579; 179 U. S. 658; 135 U. S. 572; 48 Ark.
495; 49 Ark. 396; 14 Ark. 21; 46 Ark. 524.

BUNN, C. J. Lizzie Thurmond, as the administratrix of the
estate of her deceased husband, James Thurmond, brought this suit,
for herself as the widow and James C. and Sue Ada Thurmond,
the minor children of herself and deceased husband, against the
St. Louis, Iron Mountain & Southern Railway Company, for dam-
ages in the negligent killing of her said husband, in the second
division of the Pulaski circuit court, laying the damages as follows,
to-wit: For herself in the sum of $6,000, for the children in the
sum of $7,000, and for the estate in the sum of $3,000, aggregating
the sum of $16,000, for which she prayed judgment.

The defendant answered, denying all material allegations, and
trial was had before a jury, verdict and judgment for $1,050 for
widow and children and $50 for the estate. From this judgment
defendant in due form and in due time appealed to this court,
assigning eleven separate and several grounds of error in the pro-
ceedings and rulings of the trial court.

The plaintiff testified that she was the widow of the deceased,
James Thurmond, and that they had two minor children living,
the children named in the complaint; that her husband had been
working for the railway company for five years as a fire-knocker,
receiving $1.62½ per day wages; that he was a steady colored
man, and supported his family; that she did not see the accident,
and personally did not know where and how her husband was hurt.
She only saw him after he was sent to the hospital, where he died.
She testified that she was administratix of the estate of her husband.

Deceased was working as a fire-knocker when he was
hurt—that is, he was in what is called a cinder-pit under an engine
standing on the track running over the pit lengthwise, taking the

cinders and ashes out of the ash pan of the standing engine, or was just entering the pit for the purpose of doing so, when his leg, which seems to have been on the rail of the track, was run over and crushed by the wheels of the engine which had been put in motion by the approach and concussion of the engine No. 135 coming up at the time. The leg of the deceased was amputated, and from the effects of this hurt and the operation he died soon afterwards.

A cinder-pit, it appears, is an excavation in the ground, something like the width of the railroad track or wider, and the one in this case was 75 feet long, with a decline at each end, so as to admit of the passage of engines. The pit was 18 or 22 inches deep in the ground, and the railway track above it on posts or upright blocks resting on the bottom of the pit, and extending up about 12 or 18 inches above the surrounding ground, and the stringers and track are laid on these, so that the track is from 30 to 40 inches above the bottom of the pit, may be less. The space above the track and between the wheels of an engine standing thereon is the usual diameter of the wheels, substantially.

The cinder-pit track was a continuation of a spur or side track of the railroad, which connected it with the main line of the road. At the time of the accident the engine, No. 372, had been standing on the track, until struck by engine No. 135 with such force as to move it its length; one witness for plaintiff testifying that No. 135 was moving at the rate of fifteen miles an hour, while others make no estimate of or statement as to the speed. It is disputed whether the wheels of the standing engine were blocked or not, some witnesses testifying that they were blocked by two ordinary sticks of fire wood, one oak and the other pine, each about the size of a man's leg, to use the language of plaintiff's witness. The defendant's witnesses saw no block of the kind in the vicinity.

It appears to have been the duty of the fire-knocker—the deceased in this case—to stop the engines on the track above the cinder-pit, just as he wished them to be located, and to block the wheels as aforesaid. The pit in question was 75 feet long, but it is a matter of dispute whether the level part of the track was sufficiently long to accommodate two engines, one standing and the other moving as No. 135 was. It is also a matter of dispute whether or not the construction of the pit, and track above, in connection with the position of the engines, afforded sufficient room

for escape in an emergency, and whether or not the place deceased was required to work in was not too cramped to afford ready ingress and egress in case of danger, and therefore unsafe. It is a question also in this case whether the deceased entered the cinder-pit by crawling over the track above and between the wheels of the stationary engine No. 372, or had entered the pit otherwise. From the fact that he reached the pit from a place a little distance away, where he was engaged in other works for the company, and did so in great haste after he saw the approach of engine No. 135, it is inferred by the defendant in argument that he crawled over the tracks between the wheels of the standing engine, the most hazardous way he could have selected; and this is the principal ground upon which he is accused of contributory negligence, although his failure to block the wheels, it is contended, is another ground. There is no proof of the first, that is, of the manner in which deceased attempted to enter the pit. Nor is there positive proof that he failed to block the wheels of the engine as required, or that he failed to use such means for that purpose that were at hand, and which it was the duty of the company to provide. It may be true, also, that engine No. 372 was struck with such force as to have made the use of available blocks perfectly useless.

All these questions were submitted to the jury on the charge of negligence against the defendant, as well as on the charge of contributory negligence on the part of the deceased, and the jury have determined against the defendant. Finding no reversible error in the instructions, we cannot disturb the verdict on the facts by the jury.

It is contended by defendant that the deceased as fire-knocker and the engineer running No. 135, called a hostler, were fellow servants, as they were engaged in the same employment, and were under the supervision of one person—John Morgan—the engine dispatcher, who had the discretion of the movement of engines about the yard and of others working therein. That is true, but our statute on the subject, in defining who are fellow servants, goes a step farther, and says: "All persons engaged in the service of any railway company, foreign or domestic, doing business in this state, who are intrusted by such corporation with the authority of superintendence, control or command of other persons in the employ or service of such corporation, or with authority to direct any other employee in the performance of any duty of such employee,

are vice-principals of such corporations, and are not fellow servants with such employee." Section 6248, Sand. & H. Dig.· The following section makes it a requirement that they shall also be of the same grade. It is in proof that the hostler of No. 135, that brought about the collision, had a man or men under him as assistants. The letter of the statute makes him not a fellow servant, because he supervises others, and because he is on that account not of the same grade as was the deceased, whose duty it was merely to clean out the ash boxes of engines after being in use, and before being put in use again. It is doubtful what the legislature really meant, but such is the force of the language of the act, as construed in *Kansas City, Ft. S. & M. R. Co.* v. *Becker,* 63 Ark. 477, and *Kansas City, Ft. S. & M. R. Co.* v. *Becker,* 67 Ark. 1. The verdict is extremely moderate as to amount of damages.

Affirmed.

WOOD and RIDDICK, JJ., not participating.