FORDYCE *v.* KEY.

Opinion delivered January 21, 1905.

<table>
<tr><td>74</td><td>19,</td></tr>
<tr><td>f79</td><td>440</td></tr>
<tr><td>82</td><td>375</td></tr>
<tr><td>74</td><td>19</td></tr>
<tr><td>85</td><td>394</td></tr>
<tr><td>74</td><td>19</td></tr>
<tr><td>88</td><td>26</td></tr>
<tr><td>88</td><td>458</td></tr>
<tr><td>74</td><td>19</td></tr>
<tr><td>90</td><td>331</td></tr>
</table>

1. INSTRUCTIONS—SHOULD NOT BE ABSTRACT.—In an action by an engineer's hostler to recover for damages sustained while engaged in service on a locomotive engine, an instruction that if the accident complained of occurred by reason of a defect in the construction or condition of the engine, and if the railway, by the use of reasonable care, could have prevented the injury, then the jury should find for the plaintiff, was error where there was no evidence tending to prove a defect in the engine. (Page 22.)

2. VIEW—ABSENCE OF JUDGE.—Where the plaintiff in a personal injury suit asked leave to make exhibit of his injured parts, it was error, over defendant's objection, to allow the plaintiff to retire for this purpose, with the jury and opposing counsel, to another room and submit to an examination by the jury in the absence of the presiding judge. (Page 22.)

3. FELLOW SERVANTS—TEST.—An instruction which made the question whether two employees were fellow servants to depend on whether they had no "control over each other in the way of discharging or employing each other," was erroneous. (Page 23.)

Appeal from Polk Circuit Court.

WILL P. FEAZEL, Judge.

Reversed.

*S. W. Moore* and *Read & McDonough,* for appellants.

The court erred in overruling defendant's motion to require plaintiff to elect upon which allegation or act of negligence he would rely for a recovery. 88 Fed. 770; 51 Mo. App. 125; 29 N. W. 224; 71 Mo. 514; 72 Mo. 212; 19 Am. & Eng. R. Cas. 36; 8 *Id.* 123; 5 *Id.* 504; 26 Conn. 220; 44 Am. & Eng. R. Cas. 494; 8 How. Pr. 177; 7 N. Y. Sup. 753; 4 How. Pr. 226; 16 S. E. 292; 30 S. C. 111. It was error for the jury to retire from the court room and examine the injuries of the plaintiff. 12 Am. & Eng. Enc. Law, 367; 19 N. J. L. 76; 1 N. J. L. 145; 22 Minn. 5; 42 L. R. A. 372. There was no evidence to

support the verdict. 41 Ark. 382; 44 Ark. 524; 45 Ark. 318; 46 Ark. 555; 48 Ark. 460; 54 Ark. 389; 4 Elliott; Railroads, § 1697; 27 N. E. 62. Instruction No. 2 was error. 63 Ark. 477. It was error to refuse instructions requested by defendant. 35 Ark. 602; 41 Ark. 542; 46 Ark. 388; 54 Ark. 389; 58 Ark. 125, 168; 46 Ark. 555; 58 Ark. 477. The argument of appellee's counsel was improper. 70 Ark. 179; 69 Ark. 648. It was error to permit appellee to introduce evidence that the engine moved at the time Key was injured. 41 Ark. 394; 59 Ark. 165.

McCULLOCH, J. Appellee sued appellants as receivers of the Kansas City, Pittsburg &. Gulf Railroad Company for damages for personal injuries received whilst employed by them as "hostler's helper," his duties as such being to assist the hostler or engineer in charge of engines in the yards, and to "knock the fire, rake ashes and to coal and water the engine." The injury occurred in the yards of the company at Mena, Ark., and appellee, in his testimony, describes the occurrence as follows:

"Billingsly was foreman or hostler; Lockhart and myself composed the gang. About 3 p. m. we took engine 373 to the coal chute to take coal. On the way down Billingsly whistled the number of tons he wanted. When we got down there Billingsly holloes to the coal chute foreman, and the coal chute foreman told him to take coal from number 2. The coal chute foreman indicated the number of stall at which the engine was to stop by holding up a number of his fingers showing the number of the stall. The engine stopped at No. 2. The engine came to a dead standstill. Lockhart pulled the rope, and the chute or the apron of the chute came down, and the coal was running into the tender, and one side of the tender was full, and Billingsly holloed to raise it up and throw the coal on the far side, which we had to do every time we filled an engine. It required the services of two men to raise the apron up. We could not raise the apron without taking the position we did, unless I went in front of the chute, where the coal would fly on me. Lockhart was at rear of tender. He stood there to assist, and also because he always filled the engine with water, and he stood at the back to be at the water hole. The engine backed up north to the chute. And we pulled the coal apron down, and the cab of the engine was right behind me, and the

apron of the coal chute was in front, and I was standing there
holding up the big iron trough, and Lockhart was standing on
the other side of the trough, and the engine moved back there,
and of course the cab struck me square across the hips. I don't
know who put the engine in motion. Mr. Billingsly had charge
of it. He was sitting in the engine. I was mashed or crushed
by the coal chute apron. I ascertained that the engine was mov-
ing by it catching me. No signal was given. When I holloed,
Billingsly threw the engine forward, and it ran ahead. The engine
was standing still at the time I pulled the apron down. When I
went between the apron chute and the cab, they were about one
and one-half or two feet apart. The engine had moved about one
and one-half feet when·I was caught."

Billingsly, the engineer, testified concerning the injury as
follows:

"I stopped at the coal chute as they directed me to do; that
is, as the helpers asked me to stop, when I was far enough, and
they pulled the chute down; and it was only just half a second, or
something like that, it happened so suddenly, that I heard some one
hollo, and turned around, and saw that the chute was on his
thighs (Mr. Key's), and I backed the engine off of him, and
got up, and took him off. He was standing on the tool box. The
engine did not move. The engine was standing on level track.
Plaintiff could have been hurt without the engine moving. He
could have pulled the coal apron down on him. This engine
throttle was all right, and the engine was in good repair. The
brakes were properly set."

Appellants proved by other witnesses that the engine was in
good condition and free from defects.

Appellee alleges negligence on the part of appellants' servants
in two particulars, viz.: That Billingsly, the engineer, who,
he claims, was his superior, and not his fellow servant, caused the
engine to move; and that by reason of the worn and defective con-
dition of the throttle of the engine, allowing steam to escape and
enter the cylinder, which was known to appellants, the engine was
put in motion.

The court, on motion of plaintiff and over the objection of
defendants, gave the following instruction:

"It is the duty of a railway company to use reasonable·care in furnishing its employees safe appliances for performing the services entrusted or required to be performed by them, and to exercise care in maintaining such appliances in good repair; and in this case if the jury find from a preponderance of the evidence that the accident complained of occurred in a defect in the construction of the engine or a defective condition of the throttle [or] of any other part thereof that conduced to the injury complained of herein, and that the defendant company, by the use of reasonable care, could have prevented such result, then they should find for the plaintiff."

There was no testimony tending to show that there was any defect in the engine, so this instruction was abstract, and should not have been given. The burden was upon the plaintiff to show, not only that the engine was defective, but also that the company had notice of the defect, or could, by the exercise of reasonable care, have discovered the same. Negligence of the company in this particular cannot be inferred from the occurrence of the injury. *St. Louis, I. M. & S. Ry. Co.* v. *Rice,* 51 Ark. 467; *St. Louis, I. M. & S. Ry. Co.* v. *Gaines,* 46 Ark. 555; *St. Louis, I. M. & S. Ry. Co.* v. *Harper,* 44 Ark. 529; *Railway Co.* v. *Davis,* 54 Ark. 389; *Little Rock & F. S. Ry. Co.* v. *Eubanks,* 48 Ark. 460.

The instruction, being without evidence to warrant it, was misleading, and therefore prejudicial. *Kansas & Texas Coal Co.* v. *Chandler,* 71 Ark. 518; *St. Louis & S. F. Ry. Co.* v. *Townsend,* 69 Ark. 380.

The record shows that during the progress of the trial the plaintiff's attorney asked and obtained leave of the court (without objection from the defendants) for plaintiff to make exhibit of his injured parts to the jury, and the court directed the jury and plaintiff and the attorneys in the case to retire to a jury room for that purpose, the presiding judge not accompanying them. The defendants objected to the procedure, and noted their exceptions. The recitals of the record are as follows: "Thereupon the jury, accompanied by the plaintiff, his attorney, Mr. McPhetrige, and Mr. McDonough, attorney for defendants, retired to the jury room, without the presence of the court.

"Mr. McDonough: 'If the court please, I want to except to this, in order that the court and counsel may understand me

plainly. I except to the sending of the jury out of the presence of the court, and the examination of the plaintiff in the presence of the jury in the room where they were sent. The plaintiff was there explaining certain things about the character of the injuries and the manner in which they were received.'

"The Court: 'Let the record show that the court here offers to go in company with the jury and counsel to the room.' "

It does not appear that the court accompanied the jury.

This proceeding was highly improper. The presence of the presiding judge at all stages of a trial is essential. We need not go to the extent here of deciding, as held in some States, that the temporary absence of the judge is prejudicial error for which a verdict will be set aside, even where no objection is made at the time or prejudice shown, for in this case the defendant objected at the time and pointed out his reasons therefor. It was too late to cure the error for the court merely to make an offer to accompany the jury, after substantial proceedings had occurred in his absence. The danger and prejudice of this practice is pointed out in the case of *Stokes* v. *State,* 71 Ark. 112, and authorities there cited.

We find no error in the giving of instructions except the one hereinbefore described, nor in the refusal of instructions asked by the defendants. All of the refused instructions were fully covered by those given at the instance of defendants. Their instruction number one, which was given by the court, in so far as it under-took to define the word "fellow servants" in the meaning of the law, was more favorable to defendants than they were entitled to under the statute, in that it stated the law to be that the plaintiff and the hostler were fellow servants unless they "had control over each other in the way of discharging or employing each other." This is an improper definition, as no such test is fixed by the statute. Kirby's Dig. § § 6658, 6659; *St. Louis, I. M. & S. Ry. Co.* v. *Thurmond,* 70 Ark. 411; *Kansas City, F. S. & M. Ry. Co.* v. *Becker,* 63 Ark. 477.

No error was committed in refusing the second instruction asked by defendants defining fellow servants, as it contained the same vice indicated above.

Under the proof in this case the jury might have found that plaintiff and the hostler were not fellow servants, but that the

latter was vice-principal under the terms of the statute, for whose negligence the principal was responsible. *St. Louis, I. M. & S. Ry. Co.* v. *Thurmond, supra; Kansas City, F. S. & M. Ry. Co.* v. *Becker, supra; Railway* v. *Touhey,* 67 Ark. 209; *St. Louis, I. M. & S. Ry. Co.* v. *Rickman,* 65 Ark. 138; *St. Louis & S. F. Ry. Co.* v. *Furry,* 114 Fed. 898.

For the errors indicated the judgment is reversed, and the cause is remanded for a new trial.