## CHICAGO MILL & LUMBER COMPANY *v.* COOPER.

### Opinion delivered April 12, 1909.

1. MASTER AND SERVANT—NEGLIGENCE—PRESUMPTION.—Where a servant alleges that his master was negligent in furnishing defective machinery which caused his injuries, the burden is upon him to prove this by a preponderance of the testimony, as negligence of the master cannot be presumed merely from the occurrence of the injury. (Page 331.)

2. SAME—EVIDENCE OF NEGLIGENCE.—Evidence that a locomotive engine was defective for a long time down to a very short time before the injury complained of was sufficient to warrant the inference that it existed at the time of the injury. (Page 331.)

3. SAME—WHAT IS PROXIMATE CAUSE.—Where several proximate causes contribute to a casualty, and each is an efficient cause without which

the casualty would not have happened, it may be attributed to all of the causes; but it cannot be attributed to a cause without whose co-operation the accident would not have happened. (Page 333.)

4. SAME—DEFECTIVE MACHINERY.—Where plaintiff was injured by the negligent movement of a locomotive engine, a finding that the injury was caused by the defective condition of the engine is supported by evidence tending to prove that the engine moved by reason of the accumulation of steam in the cylinder caused by a defect in the engine, and that it was not caused by the negligence of the engineer, who was standing away from the engine. (Page 334.)

Appeal from Mississippi Circuit Court; *Frank Smith,* Judge; reversed in part.

*W. J. Orr, W. J. Lamb* and *E. E. Wright,* for appellants.

1. A verdict should have been directed for defendants, there being no legal evidence to prove actionable negligence. 57 Ark. 468; 145 U. S. 593; 144 *Id.* 408.

2. The mere happening of the accident and injury is not sufficient to shift the burden from plaintiff. The burden is on the plaintiff. 46 Ark. 555; 111 Tenn. 472; 44 Ark. 527; 51 *Id.* 479; 79 *Id.* 81; 57 *Id.* 479; 148 Fed. 369; 132 *Id.* 593; 179 U. S. 658; 166 *Id.* 617; 83 Iowa 105; Mo. 268; 90 Cal. 497; 46 Oh. St. 386; 42 Mich. 41; 65 Mid. 438; 71 C. C. A. 558; 81 *Id.* 559; 1 Bailey on Master & Servant, § § 454a, 1597; 2 *Id.* § 833.

3. No defect was shown in the engine at the time of the accident, nor that a defect was the proximate cause of the injury. 179 U. S. 658; 44 Ark. 405; 119 Mass. 412; 40 N. E. 212; 91 Ky. 526; 98 Ala. 570; 48 Ark. 460; 2 Labatt on Master & Servant, § 820; 69 Me. 174.

4. Defendants performed their whole duty when they supplied an instrumentality reasonably safe when carefully used by the fellow servants of plaintiff. 1 Labatt on Master & Servant, § 390; 90 Mich. 31; 126 N. Y. 569; 109 *Id.* 496; 84 Wis. 636; 46 Minn. 473; 135 Mass. 209; 179 Penn. St. 473.

5. The evidence of the alleged defect was incompetent and inadmissible.

6. The verdict is contrary to the physical facts of the case. 79 Ark. 608; 131 Mo. 256; 187 *Id.* 227; 171 *Id.* 116; 91 S. W. 505; 137 Fed. 567; 6 Am. Neg. Cases, 228; 106 S. W. 751; 103 *Id.* 124, and many others.

6. The evidence shows that neither the Transportation Company nor O'Bryan was liable at all.

*Armstrong & Gravette* and *J. T. Coston,* for appellee.

1. When the master owes his employee a duty, and fails to discharge it, which contributes to an injury, he is liable by reason of his own negligence, notwithstanding the negligence of a fellow servant may have been the immediate or direct cause of the injury. 54 Ark. 299; 67 *Id.* 8; 113 S. W. 359; 99 Fed. 51; 203 U. S. 473; 106 *Id.* 702, and others.

2. Review the instructions and contend there is no reversible error.

3. Evidence as to the condition of the engine and its defects just prior to the injury was competent. 1 Labatt on Master & Servant, 137; 115 N. W. 172; 88 *Id.* 998; 111 *Id.* 847-8; 57 N. E. 865; 64 N. W. 1006; 47 *Id.* 1042; 12 So. 179; 33 Am. Rep. 56; 16 N. E. 152; 53 Ark. 462; 43 Ill. 343; 19 Kans. 267. A reasonable presumption arose that the defect continued to the time of the injury. Cases *supra;* 58 Ark. 129; 48 *Id.* 554; 76 S. W. 413.

4. The master had notice of the defect. 104 Ill. 641; 43 Ill. App. 83.

5. The silence of O'Bryan creates a strong presumption that the leaky valve was the proximate cause. 32 Ark. 346; 77 Minn. 452; 6 Thompson, § 7656; 55 Am. Dec. 682; 25 So. 978; 54 Fed. 843; 160 U. S. 383; 21 S. E. 1028; 30 Pac. 418; 13 S. E. 751.

6. 97 S. W. 279 is a case like this and settles this.

MCCULLOCH. C. J. This is an action instituted by the plaintiff (appellee), Tom Cooper, against three defendants, the Chicago Mill & Lumber Company, the Cairo, Memphis & Southern Railway & Transportation Company, and Jack O'Bryan, to recover damages alleged to have been sustained by him on account of their alleged negligence. The Transportation Company and the Lumber Company are both Illinois corporations. The Transportation Company was, at the time of the injury to plaintiff, a common carrier operating a line of boats and barges on the Mississippi River. The Lumber Company owned and operated sawmills at various places, and was not a common carrier, but it

owned and operated a log train, composed of an engine and log cars, for the purpose of hauling logs from the tracks of the Jonesboro, Lake City & Eastern Railway Company at Barfield, in Mississippi County, Arkansas, to the Mississippi River, to be loaded on boats and barges operated by the Transportation Company. The Transportation Company had no interest in the engine and cars on track, but merely received the logs as a common carrier for transportation in its barges.

The plaintiff and the defendant, O'Bryan, were both working for the Lumber Company at the time of the former's injury. O'Bryan was engineer of the log engine, and sometimes acted as foreman. The plaintiff's duties were to fire the engine up in the morning and to assist in unloading logs from the cars at the boat landing. The logs were piled on the cars, and were held there by means of wooden stakes or standards fastened in cuffs on the sides of the cars, and were unloaded by cutting the stakes or knocking them out of the cuffs so as to permit them to roll off. This work was done by plaintiff under the orders of O'Bryan. At the time plaintiff was injured, the engine had pulled up to the river bank where the logs were to be unloaded, and stood there about four hours before any attempt was made to unload the logs. The engine was attached to two cars, each containing two tiers of logs and each tier containing six or eight logs. The engine was standing backed up to the cars— that is, with the rear end towards the cars. After the engine and cars had stood there about four hours, O'Bryan directed the plaintiff to knock the stakes out and to unload the cars, and he proceeded to do so. He was instructed to be in a hurry about it, as the derrick men were waiting on him. Plaintiff commenced cutting the stakes, beginning at the stake nearest the engine and walking backwards from each stake to another as he cut it out. He removed the three stakes that held one tier of logs on the car, and two which held the second tier, and was cutting the third when the engine suddenly moved back against the car and jostled the logs, causing one of them to roll off and strike him. He was severely injured. It is alleged in the complaint, and counsel for plaintiff contends that the evidence tends to show, that the engine moved or "walked," as it is termed, by reason of an accumulation of steam in the cylinder, and that this condition

was brought about on account of a defect in the engine. It is alleged in the complaint that the steam valve was defective, and had been for a period of two years prior to the accident, in such a way that steam would pass through the valve and escape into the cylinder in such quantities as to cause the engine to move. It is also alleged that the plaintiff was working for both the Transportation Company and the Lumber Company at the time of his injury, that both of these defendants were common carriers, and that both were guilty of negligence in permitting the engine to remain in its defective condition, and in allowing it to be used in that condition. It is also alleged in the complaint that, if the engine did not move on account of the accumulation of steam in the cylinder by reason of the defective condition of the valve, O'Bryan caused it to move by applying the steam, and that he did so without warning to plaintiff. This is the only charge of negligence in the complaint against O'Bryan.

All of the defendants in a joint answer denied the charges of negligence in the complaint, and alleged that the plaintiff was working in the employment of the Lumber Company at the time of his injury.

The plaintiff recovered judgment for damages in the sum of $8,000 against all three of the defendants, and they appealed to this court.

The evidence fails to sustain the allegation that the Transportation Company was plaintiff's employer, or that it was in any way responsible for the injury. Therefore the judgment must be reversed as to that defendant. It is true that the plaintiff testified in general terms that he was employed by that company; but subsequent portions of his testimony show that he did not know which one of the defendant corporations he was working for. He was employed by a foreman who worked for both companies, and he thought that he was employed by the Transportation Company. The other evidence in the case showed beyond dispute that the Transportation Company did not employ him, and had no part in the service he was performing, nor interest in the operation of the log train. It was owned and operated by the Lumber Company in connection with its sawmill business.

Neither does the evidence sustain the charge of negligence

against O'Bryan, and the judgment as to him must also be reversed. The only charge of negligence against him in the complaint is the alternative one that, if the engine did not move on account of the steam leaking into the cylinder, he caused it to move by applying the steam; but there is no proof at all that he was on the engine at the time. On the contrary, the only testimony concerning O'Bryan's situation at the time is that of the plaintiff himself, who said that O'Bryan was standing on the ground twelve or fifteen feet away when he last saw him, which was at the time he gave the order to cut the stakes. This was two or three minutes before the engine moved, according to plaintiff's estimate of the time.

Negligence must be proved by the party alleging it. It will not be presumed. O'Bryan was present at the trial, but did not testify. He was not compelled to do so, as there was no testimony adduced tending to prove negligence on his part in the particulars charged in the complaint. His failure to testify, under those circumstances, raised no presumption against him, and there was nothing for him to rebut.

The remaining questions pertain to the alleged responsibility of the Lumber Company. As before stated, it is undisputed that the plaintiff was injured while in the service of that company, but it is contended that there is no evidence tending to establish negligence on its part.

The negligence charged is that of having permitted a defective engine to be used, and that this negligence caused or contributed to the injury. The burden was upon the plaintiff to prove this by a preponderance of the testimony, as negligence of the master can not be inferred merely from the occurrence of the injury. *St. Louis, I. M. & S. Ry. Co.* v. *Rice,* 51 Ark. 467; *Fordyce* v. *Key,* 74 Ark. 19; *St. Louis, I. M. & S. Ry. Co.* v. *Andrews,* 79 Ark. 437; *St. Louis & S. F. Rd. Co.* v. *Hill,* 79 Ark. 76.

The injury occurred in September, 1906, and one witness testified that for a considerable length of time up to February, 1906, when he quit the service of the company, the valve of the engine was so defective that steam would leak into the cylinder in sufficient quantity to cause the engine to move without the throttle being open. He described the defect as being a hole in the valve about the size of a dress pin, and said that sufficient

quantity of steam could leak through this hole to cause the engine to move, and that the engine did move sometimes without the throttle being open.  He also testified that the engine was sent to the shop for repairs about the time he left the service of the company, but he did not know whether or not the valve was repaired; that it had been sent to the shops before and was in better condition for a while, but that the valve got "out of trim" again.  The engine is shown to have been an old one, and very much worn.  Another witness testified to the same defective condition of the engine about a year before the injury.  He said that it was always the custom, while he worked there, to scotch the engine when it stopped, in order to keep it from moving.

Plaintiff worked there, firing the engine and unloading logs, four weeks before his injury occurred, and another witness, who was the regular foreman that employed plaintiff, testified that O'Bryan, the engineer, reported to him during that time that the engine would move.  The witness did not specify with certainty the time when these reports were made to him, and counsel for defendants insist that it was not shown by his testimony that it occurred while plaintiff was at work there; but we think, from the way the questions were asked and the answers given, the jury had the right to infer his meaning to be that it was during the four weeks preceding the injury while plaintiff was working there.  He was speaking of plaintiff's employment, and in the same connection stated that O'Bryan made this report to him concerning the defective condition of the engine.

We are of the opinion that the evidence was sufficient to warrant a finding that the defect in the engine existed at the time plaintiff was injured, and, if it did exist, there is abundant evidence that said defendant was aware of it or could have discovered it by the exercise of ordinary care.  The direct evidence does not show the defective condition at the precise time of the injury, but the condition is shown to have existed for a long period of time down to a very short time before the injury, and that it was sufficient to warrant the inference that it existed at the time.  *Little Rock & Ft. Smith Ry. Co.* v. *Eubanks,* 48 Ark. 460; *St. Louis, I. M. & S. Ry. Co.* v. *Freeman,* 89 Ark. 326; 2 Labatt on Master & Servant, § 820.  In the Eubanks case *supra,* the court said: "Where a defective track is alleged to be

the cause of the casualty, it is often impracticable to adduce evidence of the condition of the track at the precise moment the casualty occurred. It is enough to prove such a state of facts shortly before or after as will induce a reasonable presumption that the condition is unchanged."

The evidence is conflicting on the point whether or not the alleged defect in the engine would permit enough steam to leak into the cylinder to cause the engine to move. There was, we think, sufficient evidence to sustain a finding either way on that question.

There was sufficient evidence to justify a submission to the jury of the questions whether or not the engine in the condition prescribed was reasonably safe, and whether or not the conduct of said defendant in permitting it to be used in that condition constituted negligence.

It is contended that the defect in the engine, even if it existed, was not the proximate cause of the injury. In support of this contention it is shown by uncontradicted testimony adduced by defendants that, even with steam leaking into the cylinder on account of the defective valve, if the reverse lever of the engine had been "put on center," the engine could not have moved, and that if the cylinder cocks had been left open the steam would have escaped through the cocks as fast as it leaked in, without moving the engine. That it was the duty of the engineer, when he stopped the engine, to put the reverse lever on center and to open the cylinder cocks, and that his failure to do so constituted negligence which was the proximate cause of the injury. There is no charge in the complaint of negligence on the part of O'Bryan, the engineer, in this respect, but, if this be true, then it makes out a case of concurring negligence on the part of the master in permitting the defective condition of the engine and of O'Bryan, the fellow servant of plaintiff, in failing to put the lever on center, and leave the cylinder cocks open. The negligence of each contributed to the injury, which would not have occurred but for the negligence of both.

The New York Court of Appeals, speaking through Justice Earl, states the following rule of law on the subject, which we think is correct: "When several proximate causes contribute to an accident, and each is an efficient cause, without the operation

of which the accident would not have happened, it may be at-tributed to all of the causes; but it cannot be attributed to a cause unless without its operation the accident would not have happened." *Ring* v. *Cohoes,* 77 N. Y. 83.

Mr. Thompson states the rule thus: "Where the master fails in his duty to the injured servant of furnishing safe prem-ises, machinery, tools or appliances, and this failure is a proxi-mate cause of the injury, the fact that the negligence of a fellow servant also commingles with it as a proximate or efficient cause will not exonerate the master from liability." 4 Thompson on Negligence, § 4858. See also, 1 Labatt on Master & Servant, § 814; *Grand Trunk Ry. Co.* v. *Cummings,* 106 U. S. 700; *Gila Valley Ry. Co.* v. *Lyon,* 203 U. S. 473; *Norfolk & W. Rd. Co.* v. *Nuckolls* (Va.), 21 S. E. 342; *Ellis* v. *Railroad Co.,* 95 N. Y. 552; *Coppins* v. *N. Y. C. Rd. Co.* (N. Y.), 25 N. E. 915.

The same principle is recognized by this court in *Kansas City, F. S. & M. Rd. Co.* v. *Becker,* 67 Ark. 1; *Marcum* v. *Three States Lumber Co.,* 88 Ark. 28.

It is insisted that, as the proof does not expressly negative the fact of O'Bryan having caused the engine to move by going on it and applying the steam after he gave directions to plaintiff to cut the stakes, the state of the testimony did not warrant the jury in finding that the engine moved on account of the defect, instead of being put in motion by O'Bryan. Without intending to relax the rule already announced that the burden is on the plaintiff to make out his case by proving negligence as set forth in the complaint, we are of the opinion that the peculiar circum-stances of this case justified the jury in finding that O'Bryan did not put the engine in motion, that it was not done by any other direct human agency, but that it moved on account of the accumulation of steam which had leaked into the cylinder by reason of the defective condition of the valve. O'Bryan was standing on the ground twelve or fifteen feet from the engine when he gave the direction to plaintiff to cut the stakes. No one saw him go toward the engine, and the engine moved within a very short space of time while plaintiff was cutting the stakes according to O'Bryan's directions. While the fact that O'Bryan, when last seen after giving the orders to plaintiff, was standing away from the engine raises no presumption of law that he did

not go to the engine and set it in motion, yet it justified the jury in drawing the inference that he did not do so, and that the engine was moved by the accumulation of steam in the cylinder.

Errors of the court are assigned in the refusal of instructions; but as all of the instructions are not set out in the abstract, we can not, without exploring the record, determine whether the rulings of the court in this respect were correct or not. Finding no error in the record as to the defendant Chicago Mill & Lumber Company, the judgment as to that corporation is affirmed; but the judgment is reversed and the cause is dismissed as to the defendants Cairo, Memphis & Southern Railway & Transportation Company and O'Bryan.