MISSOURI PACIFIC RAILROAD COMPANY *v.* BURKS.

4-5652                                        133 S. W. 2d 9

Opinion delivered November 13, 1939.

*R. E. Wiley* and *Richard M. Ryan,* for appellant.
*Thomas W. Roland,* for appellee.

BAKER, J. This is a second appeal of this case. The opinion in the first appeal appears in 196 Ark. 1104, 121 S. W. 2d 65. The evidence is not essentially or materially different from what it was as set out and argued in the first case. It, therefore, becomes unnecessary to take up and reconsider upon this appeal the evidence tending to show liability and to support the judgment rendered.

The law of the case, as announced upon the former appeal is binding here. The second matter argued by appellant is that the court erred in refusing the defendant's request for a directed verdict. This contention is based upon the proposition that the appellants now contend that after a judgment for $800 was procured against the Malvern Brick & Tile Company it was set aside, and the plaintiff executed a covenant not to sue and was paid $600 therefor. If there be any essential difference in the evidence presented upon this same question at this time from what appeared in the former suit, the opinion of which is above cited, counsel, though extremely diligent, has not pointed out to us that distinction. We will content ourselves with the remark that the original suit against the Malvern Brick & Tile Company was dismissed; that there appears now a covenant not to sue. The defendants insist and contend most seriously that the conditions under which this instrument was made and entered into were tantamount to a settlement, wherein the full extent of liability for the injuries was compensated and the defendants discharged. These matters have not been so presented to us as to become a question of law, but they still appear as they did upon the former appeal as a question of fact, properly to be determined by a jury trial. We find no error, therefore, in the submission of these facts to the jury. We cannot understand how it would be of any particular advantage to set forth in detail all of the evidence in this regard in consideration of our former announcement in this respect and the action of the jury in regard thereto.

The next objection is made to instruction No. 3, given at plaintiff's request. The effect of that instruction was to tell the jury that it was the duty of the railroad company to use ordinary care to furnish the shipper

a car in such state of repair that same could be loaded by the shipper with reasonable safety. It further told the jury that if the railroad company knew of the use to which the freight car was going to be put it was their duty to furnish a car in a reasonably safe condition. It is argued that this instruction is inherently wrong for the reason that it ignores the negligence of the plaintiff while working in the car. There is no merit in that objection. The instruction given by the court to the jury was not one declaring negligence and fixing liability on account thereof. It was a short and simple declaration of the duty of the carrier. It is true there may have been in the use of this car a correlative duty owing by those who made use of it, but even if that be conceded to be true that fact certainly to no extent decreases the full duty and obligation of the carrier to exercise ordinary care to furnish the shipper a car in such state of repair that the same might be loaded with reasonable safety; that the instruction fairly stated the duty and obligation on the part of the railroad company has been determined by numerous decisions. *Missouri Pacific Railroad Co. v. Sellers,* 188 Ark. 218, 65 S. W. 2d 14.

In that case plaintiff stepped into a hole and was injured while unloading merchandise from a car. In another case, the court said: "An obligation rested on a carrier to exercise ordinary care to furnish cars in such repair that they could be unloaded in reasonable safety to those engaged in the work." *C., R. I. & P. Ry. Co. v. Lewis,* 103 Ark. 99, 145 S. W. 898.

An investigation of that case determines that the negligence in furnishing this defective car was shown by facts that justified the jury in finding that no proper inspection was made to discover a defect in the floor.

The defendants also objected to instruction No. 4. The objection is that it invaded the province of the jury. It told the jury that it was not the duty of the Malvern Brick & Tile Company, the corporation, which was having the brick loaded into the defective car, nor the duty of the plaintiff, Thomas J. Burks, to search the car in question for defects, but that the plaintiff and the Malvern Brick & Tile Company, had the right to assume that

the car furnished them had been inspected and was in reasonably safe condition. Counsel has not been careful enough to designate for our comprehension that portion of the said instruction that invades the province of the jury. It does not assume any fact nor decide any issue properly to be submitted to the jury. It merely defines certain correlative rights and duties. The plaintiff and shipper, Malvern Brick & Tile Company, might properly assume that the railroad company had not been negligent. That assumption, if indulged, made it unnecessary for the plaintiff or the Malvern Brick & Tile Company, the shipper, to make a new inspection. It might be said in reply to the argument made that the railroad company has not now the right to insist that Burks, the plaintiff, and Malvern Brick & Tile Company should have inspected the car before they attempted to load it. Such insistence amounts to a confession of negligence in the failure to make an inspection and to correct such defects as might have been found thereby. This announcement of the law is supported by authority. *C., R. I. & P.* v. *Lewis, supra.* Another case covering the same point is *Waldron* v. *Director General,* 266 Fed. 196; see annotations 41 A. L. R. 123.

We think it must necessarily follow that the plaintiff was not guilty of contributory negligence if he failed to make an inspection that would have discovered the defective condition beneath the piece of tin nailed over a hole in the floor of this car. If the tin had not been placed there by the railroad company and its agents, its location and use in covering a hole, through which the wheelbarrow Burks was operating fell, was approved by those who made the inspection before the car was furnished, and the proof shows that it was so marked as to indicate that it had been inspected. There was either no inspection or it was one that was ineffectual. Certainly no greater duty devolved upon Burks than that imposed by law upon the railroad company and its agents. Counsel point out that there were two holes at the other end of the car. That is true and these were covered by boards and nobody was hurt on either one of them. To argue that that was notice of the faulty condition of the floor is equal to an argument that ordinary care had not been

exercised to furnish a car suitable for the purposes for which it was to be used.

It is argued as to instruction No. 6, which told the jury that it was the duty of the railroad company if it furnished a car other than a Missouri Pacific car, to see that such car was reasonably safe for the use to which it was intended to be put. The objection to this instruction is that it makes the railroad company an insurer of the safety of plaintiff while working for the Malvern Brick & Tile Company, and it ignores the fact that there were two holes in the other end of the car. There were no citations sustaining appellants' contention in this regard, and it is a contention, perhaps unique in that the carrier should be permitted to furnish a defective instrumentality, provided only it does not own that instrumentality though it knows the purposes for which it will be employed by those whom it serves. The analysis of this contention makes authority unnecessary.

The trial court submitted to the jury as a question of fact to be determined by it whether the payment of $600, alleged to have been a consideration for a covenant not to sue, was a settlement or discharge of liability. If there was error in this respect, it came from the former trial wherein the appellant sought a reversal of the case and this was one of the very issues urged upon that appeal properly to be submitted in a new trial. Appellants forget or ignore the evidence on the part of all those who took part in this so-called settlement with the Malvern Brick & Tile Company. Nobody who was a party to that suit contends now that it was intended to be a settlement of full compensation to Burks for his injury. The railroad company had nothing to do with it, was in no sense concerned with it and if the conduct of the parties was not such that the payment of the $600 could be declared to have been paid and been received as full compensation for the injuries suffered, then certainly the payment of $600, $200 less than the judgment that had been rendered, and which had been set aside, might properly have been found by the jury to have been the consideration for another contract, the covenant not to sue.

At most, it was not a question of law, so there is no merit in this objection to that instruction.

We do not state the effect of instruction No. 5A as requested by the appellant, nor as amended by the trial court, for the reason that we do not understand from the abstract what the original instruction was nor what the court struck out or eliminated. We agree with the appellants that under ordinary conditions it was not incumbent upon the railroad company to exercise care to supply the plaintiff, employee of another company, with a reasonably safe place to work, but if the duty to exercise ordinary care to furnish a car reasonably safe and suitable for the purposes for which it was intended is coincident with the other condition, then certainly the carrier might not evade that first duty because it did no owe a second duty to the particular individual.

The court refused to give instruction No. 6A, requested by the defendant, which was to the effect that if the foreman of the Malvern Brick & Tile Company, having knowledge of the defects in the car, that is of the holes in one end of it, put the man to work therein, after having made this observation and after having told them to put boards over these holes, then there could be no recovery.

Appellants also argue that because there were holes observable and which were covered by employees of the Malvern Brick & Tile Company, this was notice of the defect concealed beneath the square of tin. The fact that there were holes there that were covered with boards was not in any sense the proximate cause of the injury and certainly gave no notice of any defects that may have been concealed by the tin placed over a more dangerous hole or location. Again no authority is cited to the effect that the plaintiff or his employer should be required to take notice of concealed or hidden defects because others were observable. Appellants seem to forget not only that there must be defects, but these must be present to effect the injury as a proximate cause, before there is actionable negligence and the fact that some defect may have been covered or concealed so that it was not discovered, possibly not discoverable by ordinary observa-

tion, prior to the injury does not break the chain of causation, but the injury is traceable to the original negligence. *Ark. Power & Light Co.* v. *Marsh,* 195 Ark. 1135, 115 S. W. 2d 825.

Lastly, it is argued that the verdict is excessive. The argument is far from convincing. No facts are really stated tending to show that a $1,000 verdict is excessive in a case wherein a man, young and active, has suffered an inguinal hernia. This reduces him almost to a cripple, unable to do labor in the usual and ordinary way, his only means of a livelihood, and who may be cured only by a major operation, the results of which are always in doubt until a cure shall have been effected, or until worse results may have followed. It is true that there is some evidence that the operation itself would cost only about $100. There are other expenses attendant upon such operation, perhaps two or three hundred dollars more. If the results should not turn out successfully, and no reputable surgeon would guarantee the success of such operation, the appellee would be left in worse condition than before, after having suffered intolerably, with the amount of his recovery depleted.

There is nothing in the recovery to indicate passion or prejudice, or bias of any kind. The injuries were serious. The objection is without substantial merit. The judgment is affirmed.