MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* ARMSTRONG.

4-5978 141 S. W. 2d 25

Opinion delivered May 27, 1940.

*Henry Donham* and *Richard M. Ryan,* for appellant.
*Alfred Featherston,* for appellee.

HOLT, J. Appellee, Calvin· Armstrong, while unloading a gondola coal car at Murfreesboro, Arkansas, received personal injuries on account of an alleged defect in the floor of the car and sued jointly the Murfreesboro-Nashville Railroad Company, Missouri Pacific Railroad Company and Guy A. Thompson, trustee for the Missouri Pacific Railroad Company, Kansas City Southern Railway Company and the Binkley Coal Company.

A demurrer filed by the Kansas City Southern Railway Company was sustained by the trial court, and appellee dismissed his cause of action against the Binkley Coal Company. The cause proceeded to trial against the remaining railroad companies—the Missouri Pacific and the Murfreesboro-Nashville. A verdict was returned in favor of the Murfreesboro-Nashville Railroad Company, but against the Missouri Pacific Railroad Company and Guy Thompson, trustee, in the sum of $2,000.

The negligence charged against the Murfreesboro-Nashville Railroad Company is that appellee, while in its employ, unloading a car of coal, was injured through failure of the railroad company to furnish him a reasonably safe place in which to work.

The negligence charged against the Missouri Pacific Railroad Company and Thompson, as trustee, is that they "negligently and carelessly furnished to the Binkley Coal Company, the original shipper of said car of coal, one Kansas City Southern gondola car Number 27198, without notifying said shipper of the dangerous and unsafe condition of said car and without making any inspection to ascertain the dangerous and unsafe condition of said car."

Appellant denied every material allegation in the complaint, and in addition defended on the ground that appellee's injuries were "due to and brought about by his own fault and carelessness in not watching and looking where he was stepping while working in the car and unloading the same; and in not using ordinary care for his own safety while unloading said coal from said car; in not observing said hole and defective condition of said car, which plaintiff well knew was in the floor of said car at the time, and plaintiff's injuries, if any, were due to his own contributory negligence, and same is pleaded as a complete bar and defense to this suit."

The evidence is to the following effect:

The Missouri Pacific Railroad Company was the initial carrier. It furnished Binkley Coal Company at Jenny Lind, Arkansas, the gondola coal car in question which belonged to the Kansas City Southern Railway Company. The Murfreesboro-Nashville Railway Company is the consignee and the coal car was delivered to it by the Missouri Pacific Railroad Company at Nashville, Arkansas, and it moved the car over its own track to Murfreesboro, where it placed the car on a siding and employed appellee, Armstrong, to unload the car at ten cents per ton.

At about 11 a. m. on March 17, 1939, appellee, while shoveling the coal, and after he had finished about half of the work, uncovered a hole in the car floor about an inch and a half to two inches wide and some fourteen inches long. His attention was called to the hole for the first time by bringing a board up on his shovel and then observing the slack coal running through the hole. This

board contained two "rusty" nails on each side bent outward. Appellee testified that the board was not nailed down and that he placed it back as he found it and proceeded with his work. Shortly thereafter, while lifting a lump of coal which weighed about 150 pounds, and just as he turned around with this lump of coal in his arms, he stepped into this hole, injuring his leg, and sustained other injuries which resulted in a hernia developing, about the size of a "hen egg." He also had a tooth knocked loose which later had to be extracted.

There is evidence that appellee stepped on the edge of this board covering the hole and that on account of the "rotten" condition of the floor his foot broke through, enlarging the hole.

There was the additional testimony of two other witnesses, Mr. Griffin and Mr. Ferrett, that they saw the board covering the hole at the time the car was loaded at its origin.

Appellee's hernia could probably be corrected by an operation costing about $250.

It is earnestly insisted by appellant that the trial court erred in sending the case to the jury for the reason that no substantial evidence appears upon which to base a verdict. After a careful review of the record however, we have reached the conclusion that this contention cannot be sustained.

It is the duty of appellant to furnish its shipper with a car in such condition that it could be used with reasonable safety by appellee in unloading same and its failure to exercise ordinary care in this respect would subject it to liability in damages to appellee when damaged by reason of such neglect.

In 22 R. L. C. 932, § 177, the textwriter says: "It is well settled that a common carrier owes a duty to consignors and consignees of goods shipped over its railroad to exercise ordinary care to provide reasonably safe cars, and that it is liable for injuries received by them or their servants while unloading or loading a defective car, where the defect in the car is the proximate

cause of the injuries and there is no contributory negligence. . . . The liability of a carrier for furnishing an unsafe car to a shipper is not affected by the fact that the car has been delivered to the shipper on the latter's private track. The failure of a shipper receiving a car for loading to examine it for defects may be found not to break the causal connection so as to prevent the negligent act of the carrier in furnishing the car in a defective condition from being the proximate cause of injury to the servant of a shipper because thereof.''

And in § 178: ''Where a consignee receives a car from a connecting carrier, and he or his servant is injured by reason of a defect in it, there arises the question of the liability of the different carriers who have handled the car. As to the initial carrier, its duty is to select a safe and proper car upon which to load the freight, and it is liable to the consignee for the consequences of not performing its duty.''

In *St. Louis & San Francisco Rd. Co.* v. *Fritts,* 85 Ark. 460, 108 S. W. 841, this court said: ''As a preliminary question, it may be stated to be settled that railroad companies owe to persons engaged in the work of loading and unloading cars the duty to furnish cars in such condition that they can be used with reasonable safety, and a failure to exercise ordinary care in this respect will subject the company to liability to damages to one who has sustained injury by reason of such neglect. Elliott on Railroads, § 1265c.''

Whether appellee was guilty of negligence such as would preclude recovery, we think, as has been indicated, was a question for the jury.

A case in point is that of *Chicago, R. I. & P. Ry. Co.* v. *Lewis,* 103 Ark. 99, 145 S. W. 898, where the facts are very similar to those presented here. There the injured employee was unloading a car of tile and while so doing, discovered a hole about eight inches wide and some twenty inches long. After discovering this hole, he proceeded with his work without placing any covering over the hole. While he was rolling one of these heavy pieces of tile toward the door, it ''jostled'' or ''teetered'' and

on account of its weight or movement caused plaintiff's foot to slip and go into the hole and the heavy piece of tile rolled across his leg and broke it. In that case this court said:

"We are also of the opinion that it was a question for the jury to determine whether plaintiff was guilty of negligence in attempting to continue unloading the car after he discovered the hole. It does not constitute negligence on his part unless the presence of the hole was so obviously dangerous, under the circumstances, that a person of ordinary prudence would not have continued work, and it cannot be said as a matter of law that it was so obviously dangerous as to constitute negligence. In determining that question, it is within the province of the jury to consider the degree of danger to which plaintiff exposed himself, and the question whether he should not have laid a plank temporarily over the hole while working there. But, as before stated, that was a question for the jury, and we cannot say, as a matter of law, that he was guilty of contributory negligence in continuing to work without covering the hole or demanding of the carrier's agent that same be done. . . .

"If it be conceded that the plaintiff, with notice of the defect in the car before he began to unload it, assumed the risk, as a matter of law, by proceeding with the work, yet such is not the state of facts in this case. If he had such notice before he commenced unloading the car, it might be deemed reasonable to hold him to an election, either to refuse to accept the delivery of the goods from the defective car, or to take the risk himself of unloading it, if he preferred to do so, while it was in that condition; but it would not be fair to apply that rule after he had proceeded with his work, unconscious of the defect, and discovered it while in the midst of his work of unloading. He was not bound, under the circumstances, to cease working because of the known defect, which it cannot be said was so dangerous that a prudent man would not proceed. He was not bound to break up his task in that way and to unload the car by piecemeal; and because he proceeded, under those circumstances, to complete his task it cannot be said that he assumed the

risk. In other words, it is not reasonable to expect him, to decline to proceed further, unless the danger was so obvious that it was negligence to proceed; and it therefore cannot be said that self-exposure to the danger, under these circumstances, was voluntary in the sense that he must be deemed, in law, to have accepted the risk.''

We have many times held that a suit for damages may be brought against any one or all of joint *tortfeasors* at plaintiff's option. However, only one satisfaction may be had. In *Patterson* v. *Risher,* 143 Ark. 376, 221 S. W. 468, it was there said: ''In actions against joint *tortfeasors* where a joint relationship is alleged and the doing of negligent acts jointly constituting a tort from which the injury results, and where the proof sustains these allegations, there may be a recovery against one or all of the defendants; against all, if the proof shows their joint connection in the tort, or against any one of them if the proof warrants a finding of his participation in the tort.''.

Complaint is also made as to the rulings of the trial court in giving and refusing certain instructions. Suffice it to say, however, that after a careful review of these instructions, we think no error was committed in this regard, nor do we think the verdict excessive in the light of the nature and extent of appellee's injury.

Finding no error, the judgment is affirmed.

Chief Justice SMITH and Justice BAKER dissent.

GRIFFIN SMITH, C. J. (dissenting). Armstrong's testimony was such that a directed verdict for the defendant should have been given. Although there was negligence on the part of the railroad company in supplying the defective car, the danger was fully revealed to appellee when his shovel loosened the protecting board. If he had replaced it in its original position, the injury could not have occurred. It is contended that when discovered the hole was too small for appellee's foot to pass through, and that it was enlarged when decayed portions of the flooring gave way. There is no contention, however, that space not protected by the

board was large enough to be dangerous. The simple fact is that appellee's own carelessness caused the injury after he had discovered there was a hole in the floor, and after he had, as he says, replaced the plank.

The doctrine of assumed risk is not involved. Armstrong was not appellant's servant.

Mr. Justice BAKER joins in this dissent.