THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* SAMPSON.

4-6003                                    142 S. W. 2d 221

Opinion delivered June 17, 1940.

*Thos. S. Buzbee, A. S. Buzbee* and *Moore, Burrow & Chowning,* for appellants.

*M. V. Moody* and *John F. Park,* for appellee.

HOLT, J. Appellee, Hosea Sampson, while unloading a box car of cross-ties at about one thirty p. m. on July 14, 1938, in North Little Rock, Arkansas, received personal injuries on account of an alleged defect in the

car and sued jointly the Wood Preserving Corporation, the consignee of the car, and Frank O. Lowden, James E. Gorman and Joseph B. Fleming, Trustees, for the Chicago, Rock Island & Pacific Railway Company, the delivering carrier, to recover damages.

On a jury trial a verdict was returned in his favor in the amount of $1,500 against both appellants.

The negligence alleged in appellee's complaint is that his "injuries were caused by the carelessness and negligence of the defendant, the Chicago, Rock Island & Pacific Railway Company, its agents and servants, in that the said hole in the bottom of said car and the grass, turf and manure in same rendered plaintiff's work dangerous and hazardous and defendant knew, or by the use of ordinary care could and would have known of said dangerous and defective condition of said car, and failed and refused to properly repair same before delivering same to the consignee, Wood Preserving Corporation, to be unloaded by them and their employees, and failed and refused to warn the consignees and employees and the plaintiff of such dangerous and defective condition of said car.

"That defendant, Wood Preserving Corporation, its agents, servants, and employees, knew or by the exercise of ordinary care should have known of its dangerous and defective and unsafe, hazardous, and perilous condition in which plaintiff was subjected to work, and ordered plaintiff to continue work under the known hazardous conditions."

Appellants, in separate answers, denied liability and pleaded assumption of risk and contributory negligence on the part of appellee as a bar to recovery.

July 14, 1938, appellant railway company, the delivering carrier, had placed the box car in question. loaded with uncreosoted ties, on its track No. 3 northwest of the treating plant of the Wood Preserving Corporation, to be unloaded by appellant, Wood Preserving Corporation, the consignee.

Appellee was employed by the Wood Preserving Corporation to assist in unloading the car. He began

the process of unloading at about eight o'clock a. m. on the 14th and after having worked for about two and one-half hours discovered in the end of the car in which he was working, a hole in the car floor about three feet long and about two and one-half feet wide. There was wet straw or grass on the floor of the car and around this hole. Appellee continued his work until all of the ties had been removed from the end of the car with the exception of five or six. These ties were about eight feet long and weighed approximately 250 pounds each. In unloading, appellee ended up a tie, got his shoulder under it and after balancing it on his shoulder, started to walk around the hole to the side. He looked at the hole, and in avoiding it his left foot slipped from under him as he stepped on damp grass or hay near the edge of the hole in the floor of the car. He did not fall in the hole, but fell on the floor of the car and the tie fell on him, injuring his shoulder and back, and in addition a hernia developed. The damp hay or grass caused him to slip when he stepped on it.

He incurred medical expenses of $50. He could probably obtain permanent relief from the hernia by an operation costing $100, which would not include hospitalization.

Appellants earnestly insist that the evidence was not sufficient to send the case to the jury. We, however, cannot agree.

It was the duty of appellant railway company to exercise ordinary care to furnish a car in such repair that it could be unloaded with reasonable safety to those engaged in that work. As was said by this court in *St. Louis & San Francisco Railroad Company* v. *Fritts*, 85 Ark. 460, 463, 108 S. W. 841: "As a preliminary question, it may be stated to be settled that railroad companies owe to persons engaged in the work of loading and unloading cars the duty to furnish cars in such condition that they can be used with reasonable safety, and a failure to exercise ordinary care in this respect will subject the company to liability to damages to one who has sustained injury by reason of such neglect. 3 Elliott on Railroads, § 1265c, and cases cited."

Appellant, Wood Preserving Corporation, owed to appellee, its servant, the duty of using ordinary care to provide him a reasonably safe place within which to perform his work. The law does not impose upon the railroad company any greater duty to appellee than it imposes upon the Wood Preserving Corporation, appellee's employer. Both are held to ordinary care, the one in furnishing of cars in a reasonably safe condition and the other in furnishing a reasonably safe place in which to work.

While it is true that appellee did not fall into the hole, we cannot say that the jury would not be warranted, on this record, in finding that the hole was as much a contributing and concurring cause of appellee's injury as the wet hay or straw upon which he slipped and fell. The testimony tends to show that appellee had only a certain way to go to avoid stepping into the hole and while attempting to go around it with the heavy tie on his shoulder, it was, of course, necessary for him to keep his eyes on the hole to avoid stepping into it. There is evidence that there was only about three feet of space between the west wall of the car and the hole and he was forced, in avoiding the hole, to pass through this narrow passage.

This court in *Chicago Mill & Lumber Company* v. *Cooper,* 90 Ark. 326, 119 S. W. 672, said: "When several proximate causes contribute to an accident, and each is an efficient cause, without the operation of which the accident would not have happened, it may be attributed to all of the causes; but it cannot be attributed to a cause unless without its operation the accident would not have happened. *Ring* v. *Cohoes,* 77 N. Y. 83, 33 Am. Rep. 574."

Appellants urge, however, that appellee was guilty of contributory negligence and also must be held to have assumed the risk, in the instant case, and therefore cannot recover. While we agree that the doctrine of assumed risk may be properly applied in a case of contractual relationship, such as that of master and servant, we think, under the facts in the instant case, it

was for the jury to say whether appellee assumed the risk or was guilty of negligence such as would bar recovery. Each case must depend on the facts presented. If this were a case where appellee knew of the defective condition of the car before he began to unload it, and nevertheless elected to proceed with the work with the consequent injury, we would hold that he assumed the risk and could not recover. But such a case is not presented here.

This court so held in the case of *Chicago, Rock Island & Pacific Railway Company* v. *Lewis*, 103 Ark. 99, 145 S. W. 898. That was a case in which the facts were quite similar to those presented here and we think that case controls this. There the injured employee was unloading a car of tile and while so doing, discovered a hole about eight inches wide and some twenty inches long. After discovering this hole, he proceeded with his work without placing any covering over the hole. While he was rolling one of these heavy pieces of tile toward the door, it "jostled" or "teetered" and on account of its weight or movement caused plaintiff's foot to slip and go in the hole and the heavy piece of tile rolled across his leg and broke it. It was there said:

"We are also of the opinion that it was a question for the jury to determine whether or not plaintiff was guilty of negligence in attempting to continue unloading the car after he discovered the hole. It does not constitute negligence on his part unless the presence of the hole was so obviously dangerous, under the circumstances, that a person of ordinary prudence would not have continued work, and it cannot be said as a matter of law that it was so obviously dangerous as to constitute negligence. In determining the question, it was within the province of the jury to consider the degree of danger to which plaintiff exposed himself, and the question whether he should not have laid a plank temporarily over the hole while working there. But, as before stated, that was a question for the jury, and we cannot say, as a matter of law, that he was guilty of contributory negligence in continuing to work without

covering the hole or demanding of the carrier's agent that that be done.

"It is insisted that the plaintiff assumed the risk of the danger by continuing the work after discovering the presence of the hole, and that on this account he should not be permitted to recover. While the danger from the exposed hole was not so obvious that we should say, as a matter of law, that a prudent man would not have continued to work, with knowledge of it, yet whatever danger existed was patent to a person of ordinary intelligence who knew the hole was there, and the plaintiff must be deemed to have appreciated it; and if this was a case in which the doctrine of assumed risk is applicable, we would hold, as a matter of law, that he assumed the risk.

"The doctrine of assumption, or, as sometimes termed, acceptance of the risk, is founded on the maxim *'volenti non fit injuria.'* It is generally applied as a part of the law of master and servant, but it is a distinct principle of the law which may be otherwise applied in some instances. *St. Louis & S. F. Rd. Co.* v. *Fritts,* 85 Ark. 460, 108 S. W. 841; 5 Thompson on Negligence, § 6274; *Roddy* v. *Missouri Pacific Ry. Co.,* 104 Mo. 234, 15 S. W. 1112, 12 L. R. A. 746, 24 Am. St. Rep. 333; *Glass* v. *Colman,* 14 Wash. 635, 45 Pac. 310.

"The doctrine of assumed risks is based upon voluntary exposure to known danger, but we need not enter into a further discussion of this principle, for the reason that we do not think this is a proper case for its application. As before stated, it is based entirely upon voluntary exposure to danger, and can only be applied in cases where the person may reasonably elect whether or not he shall expose himself to it. The exposure may be without physical coercion, yet the circumstances may be such as would render it unreasonable for a person to exercise his election not to proceed in that way. Therefore, if it be conceded that the plaintiff, with notice of the defect in the car before he began to unload it, assumed that risk, as a matter of law, by proceeding with the work, yet such is not the state of facts in this case.

"If he had such notice before he commenced unloading the car, it might be deemed reasonable to hold him to an election, either to refuse to accept the delivery of the goods from the defective car or to take the risk himself of unloading it if he preferred to do so while it was in that condition; but it would not be fair to apply that rule after he had proceeded with his work unconscious of the defect, and discovered it while in the midst of his work of unloading. He was not bound under these circumstances, to cease working because of a known defect, which it cannot be said was so dangerous that a prudent man would not proceed. He was not bound to break up his task in that way and to unload the car by piece-meal; and because he proceeded, under those circumstances, to complete his task, it cannot be said that he assumed the risk. In other words, it is not reasonable to expect him, in that state of the progress of his work, to decline to proceed further, unless the danger was so obvious that it was negligence to proceed, and it therefore cannot be said that self-exposure to the danger under those circumstances was voluntary in the sense that he must be deemed in law to have accepted the risk."

We think, therefore, that it was a question for the jury to determine under the facts whether appellee was guilty of contributory negligence.

It is also contended that the trial court erred in giving plaintiff's instruction No. 10. We think no useful purpose could be served by setting out this instruction here. Suffice it to say that it is our view that it is a correct declaration of the law as applied to the facts in the instant case. We do not think the evidence was sufficient to show negligence upon the part of the Wood Preserving Corporation, and as to it there should have been an instructed verdict. In other respects the judgment is affirmed.

The Chief Justice dissents.

Griffin Smith, C. J., (dissenting). The decision is erroneous for two reasons. The danger was so obvious that appellee discovered and avoided it. He does

not claim to have fallen into the hole in the floor, but says he slipped on damp grass or hay and injured himself with a tie. His own negligence was the proximate cause. The rule announced by the majority goes beyond the holding in *Chicago, Rock Island & Pacific Railway Company* v. *Lewis*, 103 Ark. 99, 145 S. W. 898. In that case the injured man actually fell through a hole.