No. 35,893

DAVID C. FOLSOM, *Appellant*, v. FRANK O. LOWDEN and JOSEPH B. FLEMING, Trustees of the Estate of THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, et al., *Appellees.*

(139 P. 2d 822)

Opinion filed July 10, 1943.

*J. Willard Haynes*, of Kansas City, was on the briefs for the appellant.

*J. E. DuMars, Clayton M. Davis*, both of Topeka, *E. S. McAnany* and *Thomas M. Van Cleave*, both of Kansas City, were on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for personal injuries. The trial court sustained a demurrer to plaintiff's petition and he has appealed.

The pertinent allegations of the petition are as follows: Plaintiff was employed by Sturgis and others, retail coal dealers in Kansas City, as a laborer, unloading cars of coal. On October 4, 1941, he and a fellow employee had completed unloading a car of coal when the end of the car fell inward onto the floor, striking and crushing his left foot. It was alleged the car belonged to the Pennsylvania Railroad Company; that it was furnished by the Midland Valley Railroad Company to the Interstate Fuel Company and by that company loaded with coal at Excelsior, Ark., and shipped to plaintiff's employer; that the Midland Valley Railroad Company transported the car to Muskogee, Okla., and delivered it to the Kansas, Oklahoma & Gulf Railway Company, which transported it to Baxter Springs, Kan., and delivered it to the Kansas City Southern Railway Company, which transported it to Kansas City and delivered it to the trustees of the Chicago, Rock Island & Pacific Railway Company (hereinafter called the Rock Island), which received the car and transported the same to a switch track adjoining the place of business of plaintiff's employer on the north and extending east and west for the purpose of being unloaded. Plaintiff's employer and each of the railroad companies were made parties defendant. The demurrer here involved was filed by the Rock Island, the delivering carrier.

It was alleged the car had steel sidewalls about five feet high; that the end walls, each of which weighed about 600 pounds, were hinged at the bottom in some manner unknown to plaintiff; that when the end walls were in an unright position and properly maintained "they were, by appliances or latches, a more accurate description of which plaintiff is unable to give, fastened securely in said upright position to each side wall of the car at the point where the ends of the top of each end wall met the ends of the top of each side wall"; that such latches were "in a position where they could be readily seen by the agents, servants and employees of the defendants, whose duty it was to make inspections thereof and to ascertain whether or not said latches were operative." It was further alleged that, unknown to plaintiff, the east end wall of the "coal car was

either so warped or sprung itself as to cause said appliances or latches to fail to catch or fasten into or with said end wall, and thus be inoperative, or said appliances or latches themselves were so broken, sprung, out of repair or inoperative that while said then east end wall of said coal car was in said upright position it had the appearance to the plaintiff, who was unfamiliar with the construction and operating of said end wall and the appliances or latches in connection therewith, of being securely fastened while in fact it was at said times unfastened, unsupported, dangerous, defective and unsafe, which was likewise unknown to plaintiff." That on October 4, 1941, "plaintiff and a fellow employee, . . . . completed the unloading of the coal car, . . . and when plaintiff was at a point in said car approximately five feet west of the then east end of said car," and "in the act of turning . . . to start walking westward, . . . the then east end wall of said car, which, prior to said time, had been in an upright position, suddenly, and without warning to plaintiff, . . . fell inward and folded into and upon the floor of said car, its top edge falling upon and striking the top of plaintiff's left foot with great force and violence, crushing and severely and permanently injuring plaintiff." The injuries were detailed.

It is alleged defendants were negligent in that they (1) failed to make reasonable inspection of the car to ascertain whether it might be safely unloaded when they knew, or should have known, that it was dangerous, defective and unsafe; (2) failed to give notice or warning to plaintiff of the dangerous, defective condition of the end of the car when they knew, or should have known, of its condition; (3) failed to exercise ordinary care to have the coal car safe for plaintiff to unload; (4) failed to discover the dangerous and defective condition of the car and repair it before delivering it to plaintiff's employers; (5) failed to have and provide a coal car in reasonably safe condition for the use for which it was intended; (6) failed to have the end of the car securely fastened, when to the eye of an ordinary observer, unfamiliar with the construction of the car and having no duty to discover defects therein, it had the appearance of being securely fastened.

With respect to his employers it was alleged, "That plaintiff is not advised and does not know whether said defendants [his employers] had notice of any defect in said coal car, but said defendants intended to and did put said coal car to the use of a conveyor of coal and received said coal in said conveyance. . . ."

The sole question presented here is whether, under the facts pleaded, the Rock Island, as the delivering carrier, is in any way liable to plaintiff for his injury.

Appellant relies strongly on the principle announced and applied by the United States Circuit Court of Appeals, Sixth Circuit, in *Erie R. Co. v. Murphy*, 108 F. 2d 817. There plaintiff was injured while unloading a carload of beaver board, delivered by the railway company to his employer, because of a defect in the car consisting of a hole in the floor. He obtained judgment against the delivering carrier, and in affirming the judgment the court said:

"Appellant's first contention is that, as delivering carrier, it was under no duty so to inspect a sealed car received from another carrier as to ascertain whether it was safe for unloading, but that only such inspection was required as would reveal whether the car was reasonably fit for transportation. . . .

"Appellant's first contention is contrary to the great weight of authority. When injury in unloading a car is the proximate result of the car's unsafe condition, the delivering carrier is also invariably held liable, if a reasonable inspection would have revealed the defect and the carrier gave no notice thereof. (Citing cases.) . . .

"Since appellant was under a duty to appellee to exercise reasonable care to discover and give timely notice of defects that might imperil appellee's safety, the only remaining question is whether there was substantial evidence that appellant failed to perform that duty." (p. 818.)

The case is reported in 126 A. L. R. 1093, with an annotation which reviews cases supporting the decision in addition to those cited in the opinion. To this list may be added the more recent case of the *Missouri Pacific Railroad Company, Thompson, Trustee, v. Armstrong*, 200 Ark. 719, 141 S. W. 2d 25, where in a somewhat similar case the initial carrier was held liable, it being held that in such a case the action might be maintained against any or all of the carriers as joint tortfeasors.

Appellee cites and relies heavily on *Railway Co. v. Merrill*, 65 Kan. 436, 70 Pac. 358, reversing in part an earlier decision in the same case (61 Kan. 671, 60 Pac. 819). The syllabus in the later opinion reads:

"A railway company which delivers a defective freight car to a connecting line is not liable in damages to an employee of the latter, who is injured by reason of such defects, after the car has been inspected by the company receiving it. The loss of control over the car and over the servants having it in charge relieves the delivering company from responsibility to the employees of the receiving company." (Syl. ¶ 1.)

The case deals with the liability of the initial and the second carrier of a car which had been delivered to and inspected by a third carrier before the injury. The case was cited with approval by the United States supreme court in *Louisville & N. R. Co. v. Chatters,* 279 U. S. 320, 49 S. Ct. 329, 333, where the facts furnish no ground for joint liability. The case was cited and followed in *McCallion v. Railway Co.,* 74 Kan. 785, 88 Pac. 50, where the pertinent syllabus reads:

"A railway company which furnishes a defective car to the employer of another is not liable in damages for injuries to the servant of the employer caused by such defect, when the employer knew of the defect in time to have repaired the same or to have warned the servant, but neglected to do either." (Syl. ¶ 1.)

In the opinion it was said:

"Plaintiff seeks to recover for a joint tort . . . The causal connection between the alleged negligence of the railway company and his injury, under the allegations of his petition, was broken by the intervening negligent acts of his employers." (p. 788.)

The court was careful to point out that the question of the obligation of plaintiff's employer to inspect the car was not decided. It was further said:

"Whether it was their [plaintiff's employers] duty to inspect cars when received it is not necessary to decide. The petition alleged that they had actual notice of the defective condition of the car for at least a day prior to the injury." (p. 789.)

In this case the allegation is:

"That plaintiff is not advised and does not know whether said defendants [his employers] had notice of any defect in said coal car, . . ."

Our Merrill case and McCallion case both rest on the question of proximate cause of plaintiff's injury, or, more accurately, whether there was an intervening cause which relieved defendant of liability for its negligence. In 22 R. C. L. 180, it is said:

"As to the liability for injuries caused by a defective car belonging to one company while in transit over the road of another company, the doctrine has been laid down in some cases that the failure to inspect, or the negligent manner of doing it, is the proximate cause of the injury and the negligence of the company turning over the unsafe car is the remote cause. The failure to discharge the obligation to inspect interposes an independent agency, which severs the causal connection between the company first guilty of negligence and the hurt." (Citing *Missouri, etc., R. Co. v. Merrill,* 65 Kan. 436, 70 Pac. 358.)

And in 52 C. J. 645, it is said:

"The fact that the negligence of another concurred with that of the railroad as a proximate cause of the injury, will not relieve the railroad from liability when but for its negligence the injury would not have been sustained; but the interposition of an independent intervening cause between a wrongful act of the railroad and the injury complained of breaks the causal connection so that the wrongful act is not the proximate cause of the injury." (Citing *McCallion v. Missouri Pac. R. Co.*, 74 Kan. 785, 88 Pac. 50.)

And in the following cases one or both of our cases is cited as applying to proximate or intervening cause: *Roberts v. Southern Pac. Co.*, 54 Cal. App. 315, 201 Pac. 958; *Flies v. Fox Bros. Buick Co.*, 196 Wis. 196, 218 N. W. 855, 856; *Wright v. Kansas City Structural Steel Co.* (Mo. App.), 157 S. W. 2d 582, 591; *Allen v. Larabee Flour Mills*, 328 Mo. 226, 40 S. W. 2d 597, 600; *Markley v. Kansas City S. Ry. Co.*, 338 Mo. 436, 90 S. W. 2d 409, 411; and *Dominices v. Monongahela R. R. Co.*, Aplnt., 328 Pa. 203, 195 Atl. 747, 749, where in a footnote it was said:

"Where a carrier neglects its duty of inspection and turns a defective car over to a connecting railroad, which, ignorant of the defect, likewise fails to inspect the car before delivery to the consignee, there is a difference of opinion as to whether the failure of inspection by the second railroad is merely concurrent negligence which does not exculpate the first carrier (citing cases) or whether it becomes the proximate cause of the injury and relieves the first railroad from liability (citing *Missouri, Kansas & Texas Ry. Co. v. Merrill*, 65 Kan. 436, 70 Pac. 358, and other cases)." (p. 209.)

And in *Union Stock Yds. Co. v. Chicago &c. R. R. Co.*, 196 U. S. 217, 25 S. Ct. 226, 49 L. Ed. 453, where the employee of a terminal company recovered damages in the state court from his employer, who paid the judgment, and then sued the carrier which delivered the car to the terminal company, the court, treating the matter as though the carrier and terminal company were joint tortfeasors, held plaintiff could not recover, but in the course of the opinion noted that the question to be decided is not "to be complicated by a decision of the liability of the railroad company to the employee of the terminal company, had the latter seen fit to bring the action against the railroad company alone, or against both companies jointly," (p. 223) and noted a diversity of holdings upon the subject in courts of high authority, citing *Moon v. Northern Pacific R. Co.*, 46 Minn. 106, 48 N. W. 679; *Pennsylvania Railroad Co. v. Snyder*, 55 Ohio St. 342, 45 N. E. 559, where the liability was treated as joint, and *Glynn v. Central Railroad*, 175 Mass. 510, 56 N. E. 698; and

*Railway Co. v. Merrill,* 65 Kan. 436, 70 Pac. 359, as holding that the negligence of the first carrier was not the proximate cause of the injury.

Our Merrill and McCallion cases are not in point here. The amended petition and demurrer thereto present no question of proximate, or intervening cause, as between appellee and other defendants.

Appellee cites *Glynn v. Central Railroad,* 175 Mass. 510, 56 N. E. 698. In that case a railway employee was injured by a defect in a car belonging to defendant railroad, which was in the possession of a connecting road for which plaintiff worked. Before the injury it had passed a point where cars from other roads were inspected by the road for which plaintiff worked. It was held that plaintiff could not recover, as defendant's liability for a defect which inspection would have disclosed ceased after the car had passed the inspection point. The case rests upon the doctrine of intervening cause, much as our Merrill case. It was cited and distinguished in *D'Almeida v. Boston & Maine Railroad,* 209 Mass. 81, 95 N. E. 398, where the employee of a coal company was killed while unloading a car of coal consigned to his employer, who had used the car in its business as a part of its works. The action was against both the employer and the railroad company which delivered the car, and it was held, under the facts in the case, that recovery could be had both against the employer and the railroad company as joint tortfeasors.

We think the case is not controlling here.

Appellee is the delivering carrier. The general rule is that a railway company, when it delivers a car of freight to a consignee to be unloaded, in the absence of notice to the consignee to the contrary, represents to the consignee, or his employee, that the car is in reasonably safe condition to be unloaded.

The consignee or his employee is regarded as an invitee of the railway company for the purpose of unloading the car. The railway company, while not an insurer of the safety of the consignee or his employee while unloading the car, is negligent if it furnishes a car defective to the extent that the consignee or his employee, using due care, is likely to be injured as a result of such defect, and is liable if such injury results. This liability is not founded upon contract but upon negligence in furnishing a defective car, and the general rules relating to liability for negligence are, or may be applicable.

Without attempting to exhaust the list, or quote at length, or point out the facts of the specific cases, we think the following cases thoroughly establish the principles above stated, though a few cases may be found which appear not to be in accord: *Waldron v. Director General of Railroads*, 266 Fed. 196; *Copeland v. Chicago, B. & Q. R. Co.*, 293 Fed. 12; *St. Louis-San Francisco Ry. Co. v. Ewan*, 26 F. 2d 619; *Chicago, R. I. & P. Rly. Co. v. Lewis*, 103 Ark. 99, 145 S. W. 898; *Missouri Pacific Railroad Co. v. Sellers*, 188 Ark. 218, 65 S. W. 2d 14; *Missouri Pacific Railroad Company v. Burks*, 199 Ark. 189, 133 S. W. 2d 9; *Missouri Pacific Railroad Company, Thompson, Trustee, v. Armstrong*, 200 Ark. 719, 141 S. W. 2d 25; *The Chicago, Rock Island & Pacific Ry. Co. v. Sampson*, 200 Ark. 906, 142 S. W. 2d 221; *Weeks v. Pollard*, 65 Ga. App. 377, 16 S. E. 2d 225; *L. & N. R. R. Co. v. Freppon*, 134 Ky. 650, 121 S. W. 454; *L. & N. R. R. Co. v. Burch*, 155 Ky. 245, 159 S. W. 782; *Gillespie's Executors v. Howard*, 219 Ky. 721, 294 S. W. 154; *Jacob v. Illinois Cent. R. Co.*, 133 La. 735, 63 So. 306; *Dunn v. Boston & Northern Street R'y.*, 189 Mass. 62, 75 N. E. 75; *Corbett v. New York Central & Hud. Riv. R. R.*, 215 Mass. 435, 102 N. E. 648; *Parker v. Grand Trunk W. R. Co.*, 261 Mich. 293, 246 N. W. 125; *Peneff v. Duluth M. & N. Ry. Co.*, 164 Minn. 6, 204 N. W. 524; *Allen v. Larabee Flour Mills*, 328 Mo. 226, 40 S. W. 2d 597; *Markley v. Kansas City S. Ry. Co.*, 338 Mo. 436, 90 S. W. 2d 409; *Rooney v. St. Louis-San Francisco Ry. Co.*, 220 Mo. App. 273, 286 S. W. 153; *Griffin v. Payne*, 95 N. J. L. 490, 113 Atl. 247; *Sears v. N. Y. Cent. Rd. Co.*, 61 Oh. App. 404, 22 N. E. 2d 634; *Dominices v. Monongahela R. R. Co., Aplnt.*, 328 Pa. 203, 195 Atl. 747; *Colorado & S. Ry. Co. v. Rowe* (Tex. App.), 224 S. W. 928; *Hanson v. Ponder* (Tex. App.), 300 S. W. 35; *Gager v. Stolle-Barndt Lumber Co.*, 149 Wis. 154, 135 N. W. 490.

In the brief of appellee criticism is made of the description in plaintiff's petition of the defect of the car, and it is asserted that the doctrine of *res ipsa loquitur* has no application. Perhaps plaintiff has described the defect as definitely as he can, and since the doctrine of *res ipsa loquitur* pertains to proof of negligence by circumstantial evidence (*Mayse v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599) we are not prepared to say it can have no application here.

We have considered all of the arguments of counsel and examined the authorities cited and think it unnecessary to say more. We

think it clear the petition states a cause of action against the appellee. Naturally, we express no view as to the liability of defendants not parties to this appeal.

The judgment of the court below should be reversed with directions to overrule the demurrer of the trustees of the estate of the Chicago, Rock Island & Pacific Railway Company. It is so ordered.